## No. 15,408.

SURFACE CREEK DITCH AND RESERVOIR COMPANY *v.* GRAND MESA RESORT COMPANY.

(168 P. [2d] 906)

Decided March 25, 1946. Rehearing denied May 6, 1946.

544

Messrs. MOYNIHAN-HUGHES-SHERMAN, Messrs. FAIR-
LAMB & FAIRLAMB, for plaintiff in error.

Mr. Harry W. Gueno, Messrs. Stewart & Brown, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

A complaint was filed in the district court by the Grand Mesa Resort Company, a corporation, in which the Surface Creek Ditch and Reservoir Company, a corporation, and Robert E. Robinson, water commissioner in Water District 40 in the state of Colorado, were named as defendants. Upon the trial judgment was entered in favor of plaintiff, to review which defendant Surface Creek Ditch & Reservoir Company has brought the cause here by writ of error.

Herein reference will be made to the parties as plaintiff and defendant.

The complaint contained three causes of action, the first involving a determination of plaintiff's title to a lake and the water impounded therein and damages sustained by reason of the defendant drawing water therefrom in violation of certain contractual rights; the second being for the rental value of a cabin site occupied by defendant on land belonging to plaintiff and ejectment therefrom; and the third for injunctive relief based on plaintiff's rights as alleged in the first cause of action.

In the amended answer to the first cause of action there were five defenses: The first contained admissions and denials; in the second it was alleged that any irrigation rights in the lake and waters impounded therein claimed by plaintiff had been abandoned; in the third there was a special defense of adverse use of the impounded waters for a period of more than forty years for irrigation purposes; in the fourth the defense of the seven-year statute of limitations was interposed; and in

the fifth estoppel was alleged as to the claim to a certain portion of the impounded waters.

In the amended answer to the second cause of action there were first, admissions and denials, and, second, an allegation of adverse possession for more than the statutory period.

Answering the third cause of action, defendant, after admissions and denials, set up a special defense alleging a sale by plaintiff to the state of Colorado of a strip of land surrounding the lake in question and all rights in and to the lake.

At a pretrial conference, on admission of the parties, the court entered its order reciting the following: 1. Plaintiff never had and enjoyed any irrigation rights to the waters impounded in the lake in dispute; 2. plaintiff's only use of said lake and the waters impounded therein was for "fishing and the propagation of fish, fish cuture, and boating and other rights which are naturally incidental thereto"; 3. the defendant claimed no recreational rights in the lake and the waters impounded therein; 4. defendant had no record title for the land occupied by it as a cabin site.

At the conclusion of the trial the court entered judgment in favor of plaintiff and against defendant: That plaintiff was the owner "of the right to the whole and the owner in fee of a part of the site occupied by Alexander Lake and entitled to the possession of the Reservoir located thereon, and the land on which it is situated within the Grand Mesa National Forest, in Delta County, in the State of Colorado * * * save and except that the defendant, The Surface Creek Ditch and Reservoir Company, is entitled to the use of one-half of water stored in said lake for irrigation purposes, provided that no part of the water stored in said lake shall be drawn therefrom prior to the third week in September of each year." The second cause of action was dismissed, and no cross error is assigned.

The motion for a new trial was overruled, and defendant relies upon thirty-nine specifications of points for a reversal of the judgment. From a study of these specifications, we have concluded that the questions presented and argued may be determined under: 1. Plaintiff's title; 2. adverse possession; 3. abandonment.

The documentary evidence, in chronological order, discloses that in March, 1892, a contract was entered into between William P. Alexander and Richard Forrest and defendant with reference to lakes and water rights located on the south side of Grand Mesa in Delta county, Colorado, to which Alexander and Forrest then asserted ownership. In this contract the Surface Creek Ditch & Reservoir Company was the party of the first part, and William P. Alexander and Richard Forrest were the parties of the second part. The pertinent part of the contract reads: " * * * Witnesseth, that the said party of the first part, for and in consideration of the covenants and agreements on the part of the second parties herein contained, have agreed and does hereby agree to and with said second parties, *that the first party will as soon as these articles are properly executed by the parties hereto upon demand of second parties execute and deliver to second parties a quitclaim deed for all that certain lake, known and recorded as lake or reservoir number 4 of the Reservoir of said party, situated on Grand Mesa in the County of Delta, and State of Colorado,* and the said first party does hereby agree, lease, demise and let unto said second parties for the purpose of propagating fish and fishing and boating therein and thereon all the lakes or reservoirs now or to be hereafter used or apportioned or owned by first parties in said County for irrigating farm lands in said County and shown or to be shown on the records of said County or in the proper land office and the Department of the Interior for and during the terms of existence of the said first parties as a Corporation under the laws of the said State of Colorado including any extension of its corporate exis-

tence by reason of said laws, but not to exceed the term of ninety-nine (99) years from and after the first day of March, 1892, it being understood and agreed that *this lease to second parties is to include only the use of said lakes or reservoirs by second parties for the propagation of fish, and the taking and fishing of the same in said lakes or reservoirs, and the running of boats thereon, which said privileges is to be exclusive in second parties and their assigns, executors, and administrators,* * * * " (Italics ours)

Alexander and Forrest, in consideration for the deeding of the lake or reservoir and the leasing of defendant corporation's lakes and reservoirs for the purposes mentioned, agreed to do certain construction work on the reservoirs belonging to defendant corporation and render certain services in connection with the water impounded therein. So far as the record discloses, Alexander and Forrest fully carried out the provisions of this contract on their part to be performed. On September 13, 1895, Forrest executed a written assignment to William Radcliffe for an undivided one half interest in the contract between Alexander and Forrest, and defendant, dated March, 1892, and on May 14, 1896, Forrest, by written instrument, transferred all of the interest in the Alexander-Forrest agreement with defendant under date of March, 1892, then owned by him and Alexander as copartners, to William Radcliffe, so that thereafter William Radcliffe became the sole owner of all of the Alexander-Forrest rights under the March, 1892, contract. Subsequently, and on July 31, 1896, defendant executed its deed to William Radcliffe, the pertinent part of which is as follows:

" * * * Witnesseth, That the said party of the first part [Surface Creek Ditch & Reservoir Company] for and in consideration of the covenants and agreements made and entered into *by and between the first party herein and Richard Forrest and William Alexander by their written instrument dated the ...... day of March, 1892,*

*and which said agreement has been assigned to the second party herein* [William Radcliffe], and in consideration of the further sum of One Dollar to it in hand paid by the said second party, the receipt whereof is hereby confessed and acknowledged, has remised, released, sold, conveyed and quit claimed, and by these presents does remise, release, sell, convey and quit claim unto the said party of the second part, his heirs and assigns, forever, all the right, title, interest, claim and demand, which the said party of the first part has in and to the following described premises situated, lying and being in the County of Delta and State of Colorado, to wit:

*"That certain Reservoir and Reservoir site known and of record in the office of the Clerk and Recorder of said Delta County, as Reservoir No. 8, Alexander Lake \* \* \* containing 32.2 acres and having a capacity of 193.2 acre feet of water."* (Italics ours)

Subsequently and on August 30, 1900, the Surface Creek Ditch & Reservoir Company, as party of the first part, entered into a contract with William Radcliffe as party of the second part wherein it "demised and leased" unto William Radcliffe the following described premises:

"All those certain reservoirs or lakes heretofore, now, or to be hereafter owned, occupied, used or appropriated by first party [Surface Creek Ditch & Reservoir Company], or the water of which, or the right to the use of such water in whole or in part, has been or may hereafter be acquired by first party under the laws of the State of Colorado or of the United States for irrigation purposes, the grant herein to second party [William Radcliffe] being limited to the use of said premises for fishing, propagating fish in, on or about the said reservoirs or lakes and the ditches and streams connecting them, and to boating thereon, which said privileges are granted exclusively to the second party, his executors, administrators and assigns, and for all other purposes the ownership, use, occupancy and control of the said

premises and the waters thereof shall be and remain in first party herein as heretofore.

\* \* \*

"The said party of the second part, in consideration of the leasing of the premises aforesaid by the said party of the first part to the party of the second part, does covenant and agree with the said party of the first part, its successors and assigns, to grant, and does hereby grant to the party of the first part the right to take and use for irrigation and domestic purposes all the water in that certain reservoir known as Arch Slough, which under the old lease belongs to the second party herein alternate years; *and also grants to said first party the right to take and use one-half (½) of the water stored each year in Alexander Lake* [Reservoir No. 8], *provided, however such water is not to be drawn from such reservoir or lake prior to the third week of September of each year.*" (Italics ours)

"It is further understood and agreed by and between the parties hereto that this lease is amendatory of a lease heretofore entered into between the party of the first part herein of one part, and Richard Forrest and William Alexander and 'Alexander & Forrest' of the other part, dated the ..... day of March, 1892, and assigned to the second party herein by the said 'Alexander & Forrest' and William Alexander and Richard Forrest, and this lease is executed in lieu of and shall supersede said former lease, except where the provisions of this lease reaffirm and are in accordance with the terms of the former lease."

Subsequently and on January 13, 1902, William Radcliffe deeded to the Grand Mesa Lake and Park Company certain property described in said deed together with:

" \* \* \* all ditch rights and water rights and privileges owned by first party used in connection with the said premises above described; and also including road-

ways and rights-of-way over adjoining lands leading to and from the said premises heretofore used by the first party in going to and from said premises;

"Also all rights of whatsoever kind or nature owned by and belonging to the first party herein by reason of any contract or contracts made by William Alexander and Richard Forrest, or Alexander & Forrest, with The Surface Creek Ditch and Reservoir Company, as well as any and all rights acquired by the said Alexander & Forrest by appropriation, or otherwise, of, in, to or upon or concerning the chain of lakes, reservoirs and their connecting channels claimed by and occupied by the said The Surface Creek Ditch and Reservoir Company in and about the vicinity of the premises above described, and by the said Alexander & Forrest, or either of them, transferred and assigned to the first party herein; as well as all such rights and privileges obtained by and belonging to the first party herein by reason of appropriation, or under any contract or contracts, agreement or understanding between the first party herein and the said The Surface Creek Ditch & Reservoir Company, or otherwise."

On September 28, 1907, a decree was entered "In the Matter of the Adjudication of the Priorities of Water Rights in Water District Number Forty in the State of Colorado. The Surface Creek Ditch and Reservoir Company, and The Park Reservoir Company, Petitioners." in which decree Alexander Lake was awarded Priority No. 1 for 193.24 acre feet on the Fork Tongue Creek Drainage Area or system as of date August 11, 1886, and in the decree we find the following: "It is therefore ordered, adjudged and decreed, That there be allowed and permitted to flow into said reservoir [Alexander Lake] and to be stored therein, from the drainage area lying tributary to the East Fork of Ward Creek and draining naturally into said reservoir, and from the said East Fork of Ward Creek and its tributaries, *for the use and benefit of the parties lawfully entitled*

*thereto,* under and by virtue of appropriation by original construction, 8,415,000 cubic feet of water or 193.24 acre feet; and the same is hereby designated as Priority Number One to date from the 11 day of August, A. D. 1886." (Italics ours)

On November 1, 1911, the Grand Mesa Lake and Park Company conveyed the real estate acquired by it from William Radcliffe by deed on January 13, 1902, to the Grand Mesa Resort Company, together with:

" * * * all rights and interests formerly owned by William Radcliffe, to, in and upon or concerning the chain or group of lakes or reservoirs commonly known as the Grand Mesa Lakes, and their connecting channels and the waters thereof (which waters are claimed and used for irrigation by the Surface Creek Ditch and Reservoir Company) and situated upon or in the vicinity of the land above described, and by said Radcliffe conveyed and transferred to the grantor herein, by deed dated January 13, 1902, and recorded in the records of said County of Delta, April 16, 1903 in Book 42, page 248; also all right and interest of the grantor in and to License Number 106, Class A, for said lake, issued to it May 4, 1909, by the Game and Fish Commissioner of the State of Colorado.

"To have and to hold, The said premises, * * * together with all ditches, water, water rights, and appurtenances thereunto belonging, or in any wise appertaining. * * * "

On November 1, 1911, the Grand Mesa Lake and Park Company assigned to the plaintiff all of its right, title and interest in and to: 1. The contract of March ......., 1892; 2. the assignment of September 13, 1895; 3. assignment of May 4, 1896; 4. agreement of August 30, 1900.

September 25, 1937, the Grand Mesa Resort Company entered into an indenture with the Game and Fish Commission of the State of Colorado wherein, among other things, it is recited:

The Grand Mesa Resort Company "is the holder and owner of Class 'A' Permit Number 512 issued by the Department of Game and Fish of the State of Colorado under provisions of the statutes of the State of Colorado for the propagation of fish and fishing rights on said lakes and others in said group numbering in all thirteen lakes * * * which permit and right has never been used for profit or commerilized [sic] by the said Grand Mesa Resort Company and the public has at all times enjoyed the unrestricted privilege of fishing upon all said lakes, and whereas the said Grand Mesa Resort Company has agreed, in consideration of the sum of $5,000.00 to be paid by the said Game and Fish Commission of the State of Colorado to grant an easement over said lakes and the shore line thereof for egress therefrom and ingress thereto for the purpose of fishing and the propagation of fish, and for said consideration to convey to the said Game and Fish Commission for the purpose of cancellation the said Class 'A' Permit No. 512.

"Now, this indenture witnesseth: That in pursuance of said agreement, and in consideration of the sum of Five Thousand ($5,000.00) Dollars, paid by the said Game and Fish Commission, the said Mesa Resort Company hereby grants, conveys and relinquishes to the State of Colorado in perpetuity the full and free right to pass and repass under, across, along and over the bed and shore line of said Eggleston, Barren, Alexander and Twin Lakes, the land effected [sic] by and subject to said easement is more particularly described as follows, to-wit: * * * Shore line as herein used means 100 ft. above high water line, except when a highway abutts [sic] said lakes the easement thereby extends to highway."

The execution and authenticity of the various contracts, leases and deeds hereinbefore mentioned was not questioned, and generally the only objections thereto were that they were incompetent, irrelevant or immaterial. It is our opinion that a complete determination of

554

the questions involved can be reached by ascertaining the relative rights and privileges which each of the parties hereto is entitled to enjoy by reason of their contractual relationship. This being our conclusion, many of the questions presented in the trial court and argued here may be entirely disregarded.

█ █ 1. Defendant is in no position to question that Alexander and Forrest had acquired some rights and interest in and to reservoirs and waters on the south side of Grand Mesa, for under defendant's contract with them under date of March, 1892, it acknowledged these property rights and for a valuable consideration acquired an interest therein. Under this contract defendant promised and agreed to execute a quitclaim deed to Alexander and Forrest for Alexander Lake upon demand therefor after the execution of the agreement, and it also promised and agreed to lease all of its lakes and reservoirs and water channels on the south side of Grand Mesa to Alexander and Forrest "for the purpose of propagating fish and fishing and boating thereon" for a period of ninety-nine years. Alexander and Forrest, as a consideration for this promised conveyance and lease, agreed to enlarge the reservoirs owned by defendant and to render other services in connection therewith, and the record justifies the conclusion that Alexander and Forrest faithfully executed their part of the contract. While the contract of March, 1892, was in force and effect, according to the record, Radcliffe obtained an assignment thereof which defendant recognized as valid and enforcible by the execution of its deed of July 31, 1896, in which all the title of the defendant was transferred and conveyed to Radcliffe. The deed fixed the acreage of Alexander Lake at 32.2 acres and its capacity at 193.2 acre feet. Defendant cannot now question Radcliffe's title to Alexander Lake, for by its deed it recognized the force and validity of its contract with Alexander and Forrest and also recognized Radcliffe as the assignee entitled to all of the rights under the

March, 1892 contract, with Alexander and Forrest; consequently, it is now estopped to question the force and validity of its deed, and William Radcliffe, on July 31, 1896, became the absolute owner, so far as defendant is concerned, of Alexander Lake. Radcliffe, being the absolute owner of the lake, entered into an indenture under date of March 30, 1900, with defendant wherein defendant "demised and leased" to Radcliffe all of the reservoirs and lakes "heretofore, now, or to be hereafter owned, occupied, used or apportioned by the first party [Surface Creek Ditch & Reservoir Company] or the right of which, or the right to the use of such water in whole or in part, has been or may hereafter be acquired by first party under the laws of the State of Colorado or of the United States for irrigation purposes." This indenture provided that Radcliffe was to enjoy fishing and boating privileges and the propagation of fish, and these privileges were exclusive in Radcliffe, his executors, administrators and assigns. In this same indenture Radcliffe, in exchange for the privileges granted by defendant, granted to defendant the right to all of the waters in Arch Slough for irrigation and domestic purposes, this being at variance with some contract or agreement to which reference is made, but not appearing in the record. *Radcliffe also granted the defendant the right to take and use one half of the water stored in Alexander Lake each year* with the priviso that such water should not be withdrawn prior to the third week in September of each year.

The validity of the deed from defendant to Radcliffe for Alexander Lake is not attacked, nor is the validity of the contract between defendant and Radcliffe, dated August 30, 1900, questioned; consequently, the record discloses that, on August 30, 1900, the title to Alexander Lake was vested in Radcliffe, and it is undisputed that the contract of this date granted defendant the right to the use of one half of the water in Alexander Lake, provided the same should not be withdrawn prior to

the third week in September. Thus far nothing appears in the record entitling defendant to question Radcliffe's right to the possession or title to Alexander Lake or his right to restrict the use of the water impounded therein. If the water impounded in the lake belonged to Radcliffe, he had a right to restrict its use; if it belonged to defendant it likewise had a right by contract to restrict its own use of the water, and this it did.

Through mesne conveyances and assignments, all of the right, title and interest of Radcliffe in and to Alexander Lake and the waters stored therein, as well as fishing and boating privileges, became vested in plaintiff, which is entitled to the full enjoyment thereof unless that right has been lost through abandonment or has been acquired by defendant by right of adverse possession. It is true that defendant's deed to Radcliffe under date of July 31, 1896, was a quitclaim deed, but nevertheless, it conveyed title to all of the lands then owned by defendant upon which Alexander Lake was located.

It is seriously contended by defendant that plaintiff has shown no irrigation, recreational or other rights in the waters stored in Alexander Lake, because, it is contended, the water adjudication decree of September 28, 1907, vested title to the water in Alexander Lake in defendant. Defendant has misinterpreted and misconstrued the effect of this water adjudication decree. The decree did not purport to grant defendant any rights to the waters impounded in Alexander Lake, but specifically provided that the water decreed to Alexander Lake was for the use and benefit of the parties lawfully entitled thereto, and under defendant's contract with Radcliffe, to which plaintiff succeeded by reason of the assignments mentioned, plaintiff became entitled to the limited use of the waters stored in Alexander Lake, not for irrigation purposes, but for the purposes specifically mentioned in the contract between plaintiff and defendant of date August 30, 1900. The water adjudication decree of August 28, 1907, conferred no new property

rights on defendant for irrigation or other purposes. Defendant became the owner of the waters impounded in Alexander Lake by reason of its appropriation on August 11, 1886, and subsequent beneficial use thereof.

"The decrees rendered thereunder [irrigation statutes] do not purport to grant any new property rights, but rather embody in a permanent form the evidence of those previously acquired; while the statutes further provided certain regulations for the distribution by the state of the water according to the priorities thus ascertained." *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357, 361, 40 Pac. 989.

To the same effect: *Alamosa Creek Canal Co. v. Nelson,* 42 Colo. 140, 147, 93 Pac. 1112; 3 Kinney on Irrigation and Water Rights (2d ed.), p. 2867, §1579.

Defendant contends that plaintiff is not making a beneficial use of the impounded water. As between the litigating parties defendant is in no position to insist that plaintiff's use of the waters impounded in Alexander Lake is not a beneficial one, for by the provisions of its contract it recognized it as such. It is now estopped to make this contention, and it, therefore, is not necessary to, and we do not, determine whether the use made of impounded waters in Alexander Lake by plaintiff is such a beneficial use as would entitle it to appropriate waters therefor. The trial court correctly adjudged that plaintiff was the owner of the right to the whole and the owner in fee of a part of the site occupied by Alexander Lake, and entitled to the possession thereof as against the claims and demands of this defendant. If we correctly understand the contention of counsel for defendant, they take the position that the deed from plaintiff to the Game and Fish Commission, under date of September 25, 1937, conveys plaintiff's entire title in and to Alexander Lake. The quoted portion of the deed herein sufficiently establishes that only an easement was conveyed and the easement was over only a small portion of the lands owned by plaintiff.

In any event the rights acquired by this grant do not inure to the benefit of defendant.

■■ ■ 2. Defendant asserts that it is entitled to the possession of the waters in Alexander Lake by virtue of adverse possession, and in support of this contention takes the position that plaintiff's rights thereto were initiated in July 31, 1896. In order to establish a right by adverse possession it was incumbent upon defendant to prove by clear and convincing evidence that it had actual, open, notorious, visible, continuous, hostile and exclusive possession of the impounded waters in Alexander Lake under claim of right for the statutory period. It is not necessary to search the record beyond defendant's amended answer and defenses. Exclusive possession was not established. In the amended answer we find these allegations: "Defendant alleges that at no time since the 31st day of July, A. D. 1896 has the said plaintiff or any of its grantors made any use of said Alexander Lake for other purposes than that of the propagation of fish and fishing and boating. * * * That the said plaintiff company and its predecessors in interest, the Grand Mesa Lake and Park Company, a corporation, and William Radcliffe, have never had or claimed other than rights for the propagation and taking of fish in and to said Alexander Lake and Reservoir."

In the record of the pretrial conference we find: "That plaintiff's rights in and to Alexander Lake, or rather the water impounded in Alexander Lake, is confined to recreational rights, that is fishing, propagation of fish, and boating, and the preservation of plaintiff's rights in such privileges."

The evidence is undisputed that plaintiff and its predecessors in interest have continuously, since the contract between defendant and Alexander and Forrest, in March, 1892, used Alexander Lake for the limited purpose indicated in the pretrial proceedings. The possession of Alexander Lake was not exclusive. It was, even according to defendant's contention, a joint possession,

and this cannot be used as the basis of adverse possession. There is another reason why adverse possession cannot be based upon defendant's use of the impounded waters in Alexander Lake even though it was continuous for a period of forty years. It is unquestioned that by the contract of July 31, 1896, defendant recognized plaintiff's predecessors' rights to limit the use of the waters impounded in Alexander Lake for irrigation purposes, even though defendant's deed to Radcliffe may not have conveyed the title to the waters annually impounded. Under these circumstances it is presumed that defendant's use of the impounded waters is permissive, and under and subordinate to the title held by its grantee; defendant is thereby estopped by its deed from claiming that its use of the water is adverse. By the execution and delivery of the deed of July 31, 1896, defendant's legal title to the interest conveyed thereunder passed to plaintiff's predecessors, and thereafter defendant's possession, if such existed, is to be regarded as subservient to the plaintiff's predecessors as its tenant or trustee, and nothing short of an explicit disclaimer of such relationship and a notorious assertion of right in defendant would render its holding hostile and adverse to plaintiff or its predecessors in interest. There is no evidence appearing in the record justifying a determination that defendant's possession, if such existed, was actual, open, notorious, visible, exclusive, continuous and uninterrupted for forty years or any other period of time required by the statute to support adverse possession, and the presumption is that the possession which defendant alleges was consonant and in harmony with the rights of the true owner. *Evans v. Welch,* 29 Colo. 355, 68 Pac. 776; *Cox v. Godec,* 107 Colo. 69, 108 P. (2d) 876; *Horne v. Hopper,* 72 Colo. 434, 211 Pac. 665.

3. Counsel for defendant, in presenting their client's defense of abandonment, and in support thereof, make the assertion that abandonment results because

since the execution of the quitclaim deed by defendant to plaintiff's predecessors in interest on July 31, 1896, there has been no use made by plaintiff of the water in Alexander Lake for irrigation purposes. Any right which plaintiff's predecessors in interest may have had or ever claimed to an appropriation for irrigation purposes is definitely abandoned by plaintiff as indicated by the record of the pretrial proceedings. As the record reveals, and the court adjudged, plaintiff has no rights in the waters impounded in Alexander Lake for any other than fishing and boating privileges and the propagation of fish, which the court classified as recreational rights. The fact that plaintiff has exercised its rights to the limited use of the waters impounded in Alexander Lake for the entire period of time since its ownership thereof is sufficient refutation of abandonment. Defendant's counsel rely upon our opinions in *Fruit Growers Co. v. Donald,* 96 Colo. 264, 41 P. (2d) 516; *South Boulder Co. v. Davidson D. and R. Co.,* 87 Colo. 391, 288 Pac. 177, and *Farmers R. and I Co. v. Fulton Irrigating Co.,* 108 Colo. 481, 120 P. (2d) 196, to support their contention that any rights which plaintiff may have had in the impounded waters in Alexander Lake have been abandoned. These decisions of our court are sound when interpreted in the light of the factual situations presented therein, but they are inapplicable to the instant case by reason of the divergent facts.

The judgment of the trial court was correct and accordingly is affirmed.