## No. 18,344.

### DON NESBITT *v.* JOSEPHINE GRAHAM JONES, ET AL.
(344 P. [2d] 949)

Decided October 13, 1959.

Mr. WILLIAM H. ALLEN, Mr. WILLIAM C. STOVER, Mr. EUGENE E. MITCHELL, for plaintiff in error.

Mr. ALBERT P. FISCHER, Mr. WARD H. FISCHER, Mr. WILLIAM R. KELLY, for defendant in error The Pleasant Valley and Lake Canal Company.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error was plaintiff in the district court in an action in which he sought to quiet title to certain lands and water rights in Larimer County, Colorado. He named five defendants, but only one of these, the Pleasant Valley and Lake Canal Company, appeared and defended. That company is a mutual ditch company incorporated in 1879. It holds decreed priorities from the Cache La Poudre River aggregating 57.15 cubic feet per second of time which are dated as early as 1861.

At the trial the parties stipulated that the only con-

troverted issue was that of title to a certain undivided one-fourth interest in 300 inches of water granted by an instrument dated July 28, 1879, and duly recorded in Larimer County. Trial was to the court and the findings and judgment were in favor of the defendant. The court ordered dismissal of the plaintiff's complaint and held that the defendant had acquired title to the water in question by adverse possession. Plaintiff seeks review of this judgment.

There are two distinct rights which were conveyed by the Canal Company to Post. The first of these was by agreement dated July 28, 1879, in which the Canal Company agreed that four people, Swan, Post, Harrington and Blackstock, were to "have and retain the right to take from said parties (sic) Ditch not exceeding three hundred inches of water at any and all times when said parties of first part shall so desire to do, said water to be used on the following land * * * "

The plaintiff is the successor in interest to Post, and he claims a preferred 75 inches of water upon the basis of this agreement. The other right granted Post 150 inches of water and is not directly in dispute. This right was exchanged in 1928 for 5 shares in the Canal Company and that exchange transaction, to the extent that it bears on title to the 75 inches of water, will be discussed in detail hereinafter. This was acquired by Post individually as a result of a conveyance dated April 13, 1880, to him from the Canal Company and it seemingly resulted from work and labor performed by Post in the construction of ditches for the purpose of utilizing water from the Cache La Poudre River. The consideration for this was payment of $100.00 and the release by Post to the Canal Company dated July 26, 1879, which stated:

"I do hereby sell, give, grant and release unto the said Pleasant Valley and Lake Canal Company and their successors and assigns all the right, title and interest which I now have in and to any share, shares, privilege or surplus credit for and on account of any work or labor per-

formed on account of the same in the irrigating ditch known and described as the Pleasant Valley Irrigating Ditch Company, and hereby give and grant to the said Pleasant Valley and Lake Canal Company the right to enter upon and enlarge the said ditch where the same crosses my land, hereby granting a perpetual right of way fifty feet wide for said ditch over and through my said land where said Pleasant Valley Irrigating ditch crosses my land."

On the death of William M. Post his farm was inherited by his wife, Emmeline E. Post, and on her death in 1925 her daughter, Lillian E. Griffin, was the successor owner. Mrs. Griffin was declared a mental incompetent on February 24, 1926, and she continued in this status until her death in 1952. Harvey Griffin was the husband of Lillian E. Griffin and was Conservator of her estate and upon her death became Administrator.

On April 18, 1953, Harvey Griffin executed an Administrator's Deed conveying the farm to the plaintiff. As originally executed, the deed failed to mention water rights. However, a correction deed which was also dated April 18, 1953, provided:

" * * * together with all water and water rights, ditches and ditch rights, used in connection therewith or appurtenant thereto, and especially five shares of the capital stock of the Pleasant Valley and Lake Canal Company."

Evidence with respect to disposition of the water here in issue is meager. The only document indicating recognition by the Canal Company of this right in Post is an entry in the minute book of the company for December 1, 1888, relating to assessment against holders of water deeds; it mentions an assessment against Post's right to 150 inches, that which was granted in 1881, and in addition, it specifies that the 300 inches held by Blackstock, Post, Harrington and Swan is excepted from the assessment.

Harvey Griffin was shown to have managed the farm

after 1924, and he testified that in his belief the 150 inches of water was the only water right that Post owned. The witnesses for the company were unable to supply information as to whether the right to the 75 inches of water had been exercised prior to 1924. In the year 1928, Griffin, as Conservator for his wife Lillian, conveyed back to the company the 150-inch right and in return received $3500.00, together with five shares in the Canal Company. The language of this grant is significant and it reads as follows:

"The water right appurtenant to the farm * * * which said water right consists of a perpetual right to use and enjoy 150 cubic inches of water per second of time for the irrigation of said premises of and from the canal of The Pleasant Valley and Lake Canal Company as and when water is available therefor under the decreed priorities of said company."

Griffin testified that prior to this exchange the farm had ample water derived from the 150-inch right, but afterwards there was often a shortage of water and that the tenant complained of this shortage. It can be concluded from this that during the period that Griffin managed the farm for the benefit of his wife, his assumption was that the only right the estate owned was the 150 inches or the five shares in the Canal Company. He said that he had never heard of any other right. The findings of the trial court are in part as follows:

"The evidence shows that plaintiff's predecessors in title never claimed such additional water rights. This appears from the evidence although at times in the 26 years after the 1928 deed they needed more water and the tenant was clamoring for more. The stockholders of the Company, certainly for more than 26 years, were exclusively and continuously getting that water. The presumption follows that all right to additional water than that on the five shares of stock had been relinquished, either back to the Company, or in the deed to the City

of Greeley in 1905, or by long lapse from non use as an appurtenance to the land in question.

"Neither in the Lillian Griffin administrators deed to the plaintiff, nor the Correction deed from her heirs is there included, in reciting the water rights sold, an undivided one-fourth ($\frac{1}{4}$) in 300 inches or a 175 inches of water additional to the five shares of stock. A search to find it enumerated there is in vain. Lillian Griffins personal representatives construed 150 inches at the full extent of the right derived through the 300 inches in the 1897 written instrument Harvey Griffin acting as Conservator of her estate under order of the Court for Lillian Griffin sold the water right appurtenant to her lands to the Company and took in exchange therefor five shares of the Company stock, plus cash. That was on May 15, 1928, more than 25 years before this suit.

"Thenceforth Griffin's right was construed by him and by the Company as the water of five shares only. He never demanded more, nor was delivered more. The Company delivered all the Post and Griffin water to its stockholders. Water was scarce. Griffin's tenant was short and wanted more. The right claimed would be one preferred over that based upon shares. The silence to assert it, under the circumstances, discredits it.

"After 1928, certainly, the Canal Company shareholders had exclusive possession of all the Griffin water other than that delivered to the Griffin farm on the five shares.

"The Griffin tenant often complained he needed more than what the 5 shares gave Griffin in that 26 year period after 1928. For the duration of the adverse possession 18 year statute, and the 20 year statute no more was delivered. The other stockholders possession of the water was not interrupted or disturbed, even in the many intervening dry years, to suit brought. The drouth of 1933 and following years having occurred during this period.

"That there were many such short water years from

1928 to 1954 in the Poudre water supplies is a notorious fact of which courts take judicial notice. The Supreme Court alluded to it in another case of claim for water right under this same canal (Pleasant Valley & Lake vs. Maxwell, 93 Colo. 73, 78)."

The trial judge was impressed with the fact that there was a complete dearth of evidence to show that Post or his heirs had ever asserted a right to the 75 inches of water, and from this concluded that waiver or estoppel had arisen and that the claim was stale. The court based its decision on the additional conclusion that there had been adverse possession for a period exceeding the several statutes of limitations and that this alternative basis also justified dismissal of the complaint. This is apparent from the final paragraphs of the conclusions:

"Here such construction by the parties, laches, estoppel and adverse use have occurred and barred the claim of the plaintiff to any water more than that under the five shares of stock.

"As a matter of law the court concludes the law and the equities here are against the plaintiff as to water rights from defendant's canal beyond that derived from five shares of its stock and the plaintiff's complaint thereto should be dismissed.

"That the court finds generally against the plaintiff and in favor of the defendant Company as to water rights claimed other than the 5 shares of its stock."

In seeking reversal of the judgment, Nesbitt argues:

*First,* That the trial court erred in various of its findings — for example, in finding that Harvey Griffin managed the Post property during the lifetime of Post; that Post never claimed more than 150 inches of water; that the Canal Company used the 75 inches exclusively and continuously for more than 26 years; that Griffin's tenant was "clamoring" for more water.

*Second,* That the trial court was in error in emphasizing and seemingly assigning importance to the parties' apparent construction and interpretation of the instru-

ments as giving to Post and his successors 150 inches only. Counsel stresses that it was erroneous to give weight to the interpretations of Harvey Griffin who during most of the period in question was acting as conservator of the estate of Lillian Post Griffin.

*Third,* That the court was in error in concluding that the failure by plaintiff's predecessor to claim the 75 inches of water in times of shortage gives rise to a presumption that the right was "relinquished" to the Canal Company "by long lapse from non use." The silence of plaintiff's predecessors, he urges, is without legal significance.

*Fourth,* That the court erred (a) in refusing to rule that the Canal Company held the 75 inches of water permissively under the terms of the instrument of July 28, 1879, (b) in failing to hold that a trust relationship was created in the instrument of grant, and (c) in failing to hold that the use of the 75 inches of water by the Canal Company was consistent with ownership in plaintiff's predecessors.

*Fifth,* That it was error for the court to conclude that the Canal Company acquired the 75 inches of water by adverse possession in view of the permissive nature of the relationship, the inadequacy of the evidence as to continuous and exclusive use, and the dearth of evidence to indicate that the Canal Company's use was under a claim of right.

*Sixth,* That the court erred in holding that plaintiff's claim was barred by estoppel or that the right was lost as a result of laches.

1. The evidence is obscure as to the exact relationship of Harvey Griffin to the farm in question *prior* to its being inherited by his wife, Lillian Griffin. Griffin testified that he managed the property *after* his wife inherited it (in 1925). Whether or not he managed it during Post's period of ownership is unimportant, so this ill founded finding of the court is not significant.

█ There *is* sufficient evidence to support the find-

ing that the Canal Company used the water exclusively and continuously for more than 26 years. Although the Canal Company did not introduce direct evidence that the 75 inches of water was used beneficially by it during the period in question, it was shown that the Canal Company owned and administered all the rights for the benefit of its shareholders. The evidence is clear that the 75 inches which is claimed as a preferred right was not delivered to the Post farm during the period in question. Thus it follows that this quantity of water was retained by the Canal Company, and it does not require any strain to deduce that it was distributed prorata to the shareholders. Thus, the failure of Post and his predecessors to exercise the privilege to take the 75 inches resulted in a larger share being distributed to the shareholders, including Griffin (after 1928, the date of the exchange of the 150 inches for the shares), for use on the irrigated farm. The other possible inference that this 75 inches was returned to the Cache La Poudre is not reasonable.

There is evidence in the record that Griffin's tenant, one Padilla, demanded additional water after the 1928 exchange, and that he complained that the water was inadequate after 1928 even though it had been adequate prior to that year. Perhaps the trial court's finding that the tenant was "clamoring" for water after 1928 is somewhat of an exaggeration, but we do not consider this significant.

■ 2. The construction of the instrument of grant of the water in dispute by the parties is not itself important. As we view it, the instrument in question is not ambiguous, and consequently the viewpoint of the parties as to its meaning cannot serve to give character to it. It must be judged upon the basis of the terms and conditions which appear within its four corners. Cf. *Greeley & Loveland Irrigation Co. v. McCloughan,* 140 Colo. 173, 342 P. (2d) 1045 (1959).

■ 3. The trial court's conclusion that the right was

relinquished by non-use does not provide a legal basis, even alternative, for determination of the controversy. The trial court concluded that there was not an abandonment as that term is applied to water rights: "This is not a case of abandonment. That would be loss of a priority to divert from the rivers water *into* Pleasant Valley Canal. The water right here was not abandoned to the river. It was used prorata by all the stockholders of the Pleasant Valley Company, after its diversion from the Cache La Poudre River." Having decided that the right had not been abandoned, it seems illogical to conclude that the right was relinquished by non-use or by implied grant.

4. The instrument of July 28, 1879, granted "the sole and exclusive right and privilege * * * That said parties of second part shall have and retain the right to take from said first parties ditch not exceeding three hundred inches of water at any and all times when said parties of second part shall so desire to do."

This grant was to a group of four parties, one of whom was Post. There is a complete lack of evidence even suggesting that this right was *ever* exercised by any of the four, and it was impossible to even locate the ditch referred to in the instrument from which this water was to have been taken. In order to overcome the unfavorable inferences which arise from the fact of long non-use, Nesbitt argues that the grant itself contemplated that the right or privilege was intended to be exercised at the option of the grantees and meanwhile the possession of the Canal Company was permissive. He argues that the grantees could elect to exercise the right at *any* time and the fact of previous non-use would not work against them — that the wording of the grant imposed no obligation on the grantees to exercise the right as against the grantor or suffer the risk of the grantor gaining title by its long continued possession. The principle that the statute of limitations does not start to run where the possession had been from inception permissive is

familiar. 3 *American Law of Property* 772, Sec. 15.4 a. *Hostility of Possession.* The applicable rules are set forth and it is noted by the authors that:

" \* \* \* On the contrary, a possession which is permissive or is otherwise consistent with the record owner's title is merely that of the owner at whose pleasure it continues, and it does not afford a cause of action so as to start the statute running. \* \* \* "

The principle that permissive use is ineffectual, and that the permissive relationship must be repudiated in order to start the running of the statute of limitations is recognized and exemplified in *Surface Creek Ditch and Reservoir Co. v. Grand Mesa Resort Company,* 114 Colo. 543, 168 P. (2d) 906, and the cases there cited. The Court there said:

" \* \* \* It is unquestioned that by the contract of July 31, 1896, defendant recognized plaintiff's predecessors' rights to limit the use of the water impounded in Alexander Lake for irrigation purposes, even though defendant's deed to Radcliffe may not have conveyed the title to the waters annually impounded. Under these circumstances it is presumed that defendant's use of the impounded water is permissive, and under and subordinate to the title held by its grantee; defendant is thereby estopped by its deed from claiming that its use of the water is adverse. By the execution and delivery of the deed of July 31, 1896, defendant's legal title to the interest conveyed thereunder passed to plaintiff's predecessors, and thereafter defendant's possession, if such existed, is to be regarded as subservient to the plaintiff's predecessors, as its tenant or trustee, and nothing short of an explicit disclaimer of such relationship and a notorious assertion of right in defendant would render its holding hostile and adverse to plaintiff or its predecessors in interest. There is no evidence appearing in the record justifying a determination that defendant's possession, if such existed, was actual, open, notorious, visible, exclusive, continuous and uninterrupted for

forty years or any other period of time required by the statute to support adverse possession, and the presumption is that the possession which defendant alleges was consonant and in harmony with the rights of the true owner. *Evans v. Welch,* 29 Colo. 355, 63 Pac. 776; *Cox v. Godec,* 107 Colo. 69, 108 P. (2d) 876; *Horne v. Hopper,* 72 Colo. 434, 211 Pac. 665. * * * "

The facts in the case at bar are similar to those presented in *Surface Co. v. Grand Co.,* supra, in that in each instance adverse possession is relied on notwithstanding that the adverse claimant had given a deed which by its terms permitted the grantor to continue in possession of the water in question.

There would be much force and persuasiveness in plaintiff's argument if as in the *Surface Creek* case, there had been no change or interruption in the relationship of the grantor and grantee during the entire period from the date of the execution of the deed to the present. However, here there is an intervening occurrence which we consider determinative — a factor which serves to distinguish the *Surface Creek* case. We refer to the transaction of May 15, 1928, between the Canal Company and Griffin as Conservator for Lillian Post Griffin under the terms of which Griffin sold and conveyed the 150 inches of water to the Canal Company for $3,500.00 and 5 shares of stock of the Canal Company. We regard this transaction significant not only because of the special terms of this grant which provides: * * * *the* water right appurtenant to the farm * * * " [emphasis supplied], but also because the entire purpose of this transaction was to transform the previous relationship from one of priority, so to speak, whereby the Post farm had been entitled to a preferred 150 inches of water, to a relationship of tenancy in common whereby the Post farm would share with the other Canal Company stockholders. Certainly this occasion and the giving of this deed served to notify Griffin acting for his wife that the Canal Company recognized no right other than that rep-

resented by the 150 inches (and thereafter the five shares). If Griffin, acting for Lillian Griffin, then claimed any other right, the occasion of this exchange provided an appropriate opportunity for the assertion of the claim. Griffin testified:

"Q. After you were appointed Conservator of your wife's estate, did you make any sale of the water rights belonging to the property? A. I did. Q. Do you remember when that sale was? A. No, not exactly. Q. Do you remember what you sold? A. I sold the rights claimed, reserving five shares of the stock of the Pleasant Valley and Lake Canal. Q. At that time, did you know personally exactly what water rights were appurtenant to the property owned by your wife? A. Well, as I remember it, she was supposed to have a right to one hundred and fifty inches of water if she wanted it. Q. Where did you obtain that information? A. Oh, from the folks, I guess, in a general way. Q. What folks? A. From Captain Post and Mrs. Post. Q. From anybody else? A. No, not in particular. No. Q. Your information was not obtained from the attorney for the Pleasant Valley and Lake Canal Company, at that time? A. Well, I was interviewed or talked to, about it. I don't know whether Fischer was one of them or not. Temple was one, I know. I did my business with Temple. Q. Did he inform you what the amount of water was that went with this farm? A. Oh, I wouldn't say now he informed me or not. He wanted me—What they wanted me to do was to get rid of the demands for that water over and above five shares of Lake Canal."

Thus, from May 15, 1928, forward it was incumbent on Griffin to assert a claim because it was then apparent that the Canal Company no longer (if it ever had) recognized any other or additional right. This transaction served to transform the previous permissive use by the Canal Company to use which was adverse and inconsistent with the relationship of permissiveness suggested by the 1879 grant. This purchase and exchange

transaction and the shift from a definite quantity of water to a limited proportionate share was in law so openly and notoriously hostile that Griffin in the exercise of reasonable diligence had notice that the Canal Company recognized no right except that which derived from five shares. It was no longer possible for Griffin to assume the Canal Company's consent to hold the 1879 right in abeyance and trust as an additional right appurtenant to the "Post" farm, and accordingly the statute of limitations then commenced to run against the instituting of a suit to gain possession of or determine ownership of the water right. The 1928 exchange transaction was wholly inconsistent with a belief by Griffin that the 75 inches of water was then and would be in the future held by the Canal Company on a permissive basis. See *Lomas v. Webster,* 109 Colo. 107, 122 P. (2d) 248. See also discussion of permissive possession 3 *American Law of Property* 791, Sec. 15.6 and see the numerous analagous cases in notes, 39 A.L.R. (2d) 353, 58 A.L.R. (2d) 299.

In *Lively v. Wick,* 122 Colo. 156, 221 P. (2d) 374 it was contended that the burden is on the person asserting the adverse claim to prove that it was adverse. The Court speaking through Mr. Justice Jackson held, however, that the burden of proof was on the owner (where there was more than 18 years of exclusive possession in the adverse claimant). It was there said:

"* * * Counsel for plaintiff Wick argue that the burden of proof was upon defendant Lively to prove that possession of the strip of land by him and his predecessors in interest was adverse to Wick and his predecessors in interest, and we are persuaded that the trial court must have assumed that position when it found that 'defendants' evidence failed to establish acquescence or adverse user of any of the lands in dispute.' Upon whom the burden of proof rested is the important question of the case.

"We have recently determined this point adversely to

the contention of plaintiffs Wick in *Trueblood v. Pierce*, 116 Colo. 221, 233, 179 P. (2d) 671, 171 A.L.R. 1270, where, referring to the litigants who occupied an analogous position to that of defendants Lively in the instant case, we said that they 'and their predecessors in title have been in possession of the easement for more than eighteen years; there is as a result thereof, a presumption that their holding was adverse. *Haines v. Marshall*, 67 Colo. 28, 185 Pac. 651; *F. C. Ayers Merc. Co. v. Union Pacific R. Co.*, 16 F. (2d) 395; *Shonafelt v. Busath*, 66 Cal. App. (2d) 5, 151 P. (2d) 873; *Friend v. Holcombe*, 196 Okla. 111, 162 P. (2d) 1008; *Ferguson v. Standley*, 89 Mon. 489, 300 Pac. 245 2 C.J.S., 822; consequently, it was incumbent upon defendants to overcome this presumption, and this they did not attempt to do. The presumption being that plaintiffs' possession was adverse, the uncontradicted evidence is that plaintiffs and their predecessors in title were in open, notorious and visible use and occupation of the easement under a claimed right thereto for more than eighteen years, and as a result thereof fully established their right to the easement by prescription.' * * *"

■ Because of the peculiar terms of the grant and the consequent relationship of the parties, it was undoubtedly true that no presumption of adverse holding arose during the period from 1879 until 1928, the date of the exchange. From and after this latter date, however, following the repudiation of the old status and the consequent shortage of water on the Post farm, a presumption arose that the exclusive possession of the Canal Company was adverse. While the plaintiff may well have been justified in relying entirely on the deed to cover the period until 1928, it became incumbent on plaintiff to go forward with evidence capable of refuting the presumption of adversity which flowed from the Canal Company's showing as to the period after 1928.

■ The argument of plaintiff that there could not be *adverse* possession by the Canal Company against the

rights of the plaintiff by reason of the fact that plaintiff's predecessors were shareholders in defendant company and tenants in common with the other shareholders lacks merit because the adverse possession is not against the Griffin-Post shareholder interest. This argument fails to take into account that there are here two distinct rights. The claim of ownership to the 75 inches here in question is contrary to, in conflict with, and adverse to the position of the Canal Company which has held this interest for the benefit of all of its shareholders, including the plaintiff. Plaintiff asserts a claim to 75 inches of water which would be skimmed off of the top and which would diminish the share of each of the other shareholders. For this reason it cannot be successfully argued that the Canal Company-shareholder relationship neutralized the factor of adversity.

We do not consider *Mountain Meadows v. Park Ditch,* 130 Colo. 537, 277 P. (2d) 527, a precedent or even an analogy here. That case was decided on the fact that the alleged adverse possessor was not engaged in any act which could be regarded as adverse to the senior appropriator. There was no interference or diversion from the latter.

*Pleasant Valley & Lake Canal Co. v. Maxwell,* 93 Colo. 73, 23 P. (2d) 948, although it involves the successful assertion *against* a ditch company of a claim based on adverse user, makes clear that there are and can be rights to the water in a mutual ditch in persons other than the shareholders and that these rights can be adverse to each other.

 The fact that Lillian Griffin was under disability during the period from 1928 until her death in 1952 does not prevent the running of the statute. The sections in question, C.R.S. 1953, 118-7-1, 118-7-12, merely add two years to the period of limitations. It does not suspend the running of the statute.

Our conclusion is that a claim for relief accrued in Griffin for the benefit of his wife·on May 15, 1928, and

that in the ensuing years, the exclusive and adverse possession of the Canal Company resulted in the acquisition by it of a right by prescription. It was not until 1953 that demand was made by the present plaintiff, and the right had been then lost. It follows therefore that this conclusion of the trial court is correct.

5. It is unnecessary to decide whether an estoppel by conduct or by deed resulted from the 1928 exchange transaction nor is it necessary to determine whether the 1953 deed to Nesbitt effectively conveyed the claimed right.

The judgment is affirmed.