Mr. Justice Groves
delivered the opinion of the Court.
The defendants in error were the plaintiffs in the trial court and will be referred to as such. They are stockholders in The Baca Irrigating Ditch Company, a mutual ditch company, here called the Baca Company. Stockholders in this company in times past are referred to as the Baca shareholders. The plaintiffs in error were defendants in the trial court and collectively are called the defendants. The three corporate plaintiffs in error will be referred to as the Joint Companies. The individual *32 plaintiffs in error are stockholders in the Joint Companies.
One issue of the case involves the ownership of 6 cubic feet of water per second of time (cfs) of 8 cfs adjudicated to the Baca Ditch in 1903 with priority date of November 3, 1861, and stream priority No. 3 of the Purgatoire River. This adjudicated priority is called the No. 3 right. Another issue relates to the ownership of that segment of the ditch below Powell Arroyo (called the extension ditch) serving those plaintiffs whose lands are located below the arroyo and the lands served by the Joint Companies. A third issue concerns injunctive relief. The trial court held in favor of the plaintiffs as to the first and third issues and against them as to the second. We affirm.
In 1884 the first Baca Company was incorporated for the purpose of operation and maintenance of the Baca Ditch. Its corporate term of existence expired in 1914. The second Baca Company with the identical name was formed in 1916 to take the place of the first corporation.
There were 40 shares of outstanding stock in the first Baca Company. In 1898 or prior thereto 20 shares of this stock had been transferred to Mr. James M. John. Only 20 shares of stock were authorized by the certificate of incorporation of the second Baca Company, and all of these 20 shares are now owned by the plaintiffs.
Originally, the predecessors of the first Baca Company were the sole owners and users of the Baca Ditch. Their lands were both above and below the arroyo. The original Baca Ditch proceeded from the headgate in the Town of Trinidad to the arroyo. In the early days, after reaching the arroyo the water was transported by a ditch (now non-existent) which followed a route different than that of the subsequently constructed extension ditch.
The predecessors in interest of the Joint Companies had acquired water rights junior to the No. 3 right, and by 1898 the Joint Companies had acquired a substantial part of these junior rights. In 1898 the Baca Company conveyed 10/19ths of all the water owned by it to the *33 Joint Companies under the provisions of an agreement then entered into between all of these companies. Under this agreement the water of all of the companies was to be transported through the Baca Ditch to the arroyo. The Joint Companies were to, and did, construct a flume across the arroyo. The extension ditch proceeded from the flume. It is implicit from the provisions of the agreement that the Baca shareholders would not be using the extension ditch and that the Joint Companies would be the sole users of the extension ditch.
The agreement contained a condition that the Joint Companies pay Mr. John $5100 “for the twenty shares of the capital stock of [Baca Company] which is held by him...” The agreement was executed on behalf of the' Baca Company by Mr. John as secretary and his wife as president. Mr. John was an officer in each of the Joint Companies, and it is apparent that he was most influential in the conduct of the business of each of the Joint Companies, as well as the Baca Company.
In 1905 the Baca Company and the Joint Companies were the grantors in a deed conveying 2 cfs of the No. 3 right to the Town of Trinidad, leaving the grantors 6 cfs. Mr. John executed the deed as president of the Baca Company, as well as president of one of the Joint Companies. The deed did not specify the portions - of the right, if any, conveyed by each of the four grantors.
At sometime prior to 1925 the Baca shareholders started carrying their water in the extension ditch for their lands lying below the arroyo. By 1925 a new flume was needed across the arroyo. The Joint Companies had claims against the Baca Company arising out of past transactions. During that year the Baca Company and the Joint Companies entered into a written agreement, under which the claims were settled and there was provision for the construction of a new flume. It further provided that the Baca Company should pay the Joint Companies the sum of $250 annually for their maintenance and operation of the ditch, and that the Joint *34 Companies would deliver the Baca shareholders’ water, at points of delivery both above and below the arroyo. This agreement was to, and did, remain in effect for 25 years.
Following the expiration of the agreement in 1950, the Baca Company discontinued payments to the Joint Companies. In 1959 representatives of the Joint Companies locked the plaintiffs’ headgates shut. The plaintiffs then started the action here involved, asking for an injunction against interference with their headgates. On April 1, 1959, the court entered a preliminary injunction, restraining the defendants from interfering with the plaintiffs’ headgates and ordering the plaintiffs to pay the Joint Companies $50 per month.
Under date of April 1, 1961, the Baca Company and the Joint Companies entered into an agreement which provided that the Baca Company should pay the Joint Companies $400 annually for maintenance and operation of the ditches and delivery of water to the plaintiffs. This agreement was to be, and presumably was, in effect until December 31, 1969. Nothing else happened in the action until the defendants filed an answer and “crossclaims.” They asked: (1) that the Joint Companies be declared to be the owners of 3.158 cfs of the 6 cfs embraced within the No. 3 right; (2) that the rights of the parties in the extension ditch be determined; and (3) that the plaintiffs be enjoined from interfering with the regulation of the plaintiffs’ headgates by representatives of the Joint Companies.
It is the contention of the defendants that the Joint Companies are the owners of 10/19ths of 6 cfs, or 3.158 cfs. In other words, prior to the 1905 conveyance to Trinidad, it is argued that the Joint Companies had 10/19ths of 8 cfs and conveyed to Trinidad the same fraction of 2 cfs.
The plaintiffs have two theories. The first theory is as follows: the Baca Company was the owner of the ditch but not the water rights involved. Rather, the Baca share *35 holders were the sole owners of the water rights, and nothing passed in the two conveyances of water rights in which the Baca Company was a grantor. It follows that the Joint Companies acquired nothing from the Baca Company in the 1898 conveyance and that the Joint Companies were the sole grantors of the 2 cfs to the Town of Trinidad. The only prior conveyances of the No. 3 right not in plaintiffs’ chain of title were by the transfer of 20 shares of stock from the Baca Company to Mr. John and by the latter’s transfer thereof to the Joint Companies. Therefore, the Baca shareholders have always had at least 4 cfs.
The second theory is that the plaintiffs are the owners of 4 cfs by reason of adverse possession.
After the transfer of 20 shares of stock to Mr. John, the plaintiffs and their predecessors in title had an aggregate of 20 shares of Baca Company stock. The testimony was in conflict as to whether a shareholder was entitled to l/5th or l/10th cfs for each share of stock. Likewise, the testimony was in sharp conflict as to whether the plaintiffs and their predecessors in interest had continuous and uninterrupted use of l/5th cfs per share for more than eighteen years.
I.
OWNERSHIP OF WATER RIGHT
The court found that the plaintiffs were entitled to 4 cfs of the No. 3 right, each Baca Company share representing l/5th cfs. The defendants have concluded that the decree was predicated upon a finding of adverse possession. The written decree does not indicate the basis upon which the court predicated its decision. From the court’s comments at the conclusion of the trial, it might have been using one or more of three bases: (1) chain of title; (2) adverse user; and (3) estoppel. These comments were as follows:
“Undoubtedly from the paper titles, actions and customs of these people, some of them for much more than forty years and certainly long beyond a prescriptive period, *36 have shown that they recognize the water rights as being %rds of the water involved to the Baca Ditch and %rd to the joint ditches. I cannot see anything else in this case .... These people before the court have long recognized this division of the %rds of 6 cubic feet of irrigation water to the Baca Ditch and %rd, or 2 cubic feet, to the joint ditches. They have all used water in accordance with this ration, and in all matters have acted upon and relied upon such division of ownership; and such has never been a question until after the previously issued temporary injunction herein.”
We feel that the judgment as to ownership could be sustained on other grounds. We will follow, however, the adverse possession path trod by the defendants. There was testimony that without interruption and under claim of right the Baca shareholders used l/5th cfs per share for a period greatly exceeding 18 years. At the hearing on the preliminary injunction one of the defendants testified that the plaintiffs were entitled to this amount.
Counsel for the defendants stressed testimony that the use of l/5th cfs per share was interrupted on various occasions. The court, however, relied on other testimony that this use was not interrupted. We find the testimony supporting adverse user by the Baca shareholders for a period of more than 18 years to have been competent and sufficient to support the decree. See C.R.S. 1963, 118-7-1 and Nesbitt v. Jones, 140 Colo. 412, 344 P.2d 949 (1959).
Counsel for the defendants ably cross-examined some of the plaintiffs, establishing that, while these persons could read the figures on the measuring devices in their ditches, they were not well advised as to the technique of the measurement by a weir. It is argued, therefore, that they could not tell whether they were receiving 1/5th or l/10th cfs per share of stock. There was testimony on behalf of the defendants that at times the Baca shareholders received only l/10th cfs per share. While lack of knowledge of some of the plaintiffs as to the *37 operation of weirs was shown, our study of the record as a whole convinces us that there was sufficient evidence to support a finding of title by adverse user to l/5th cfs per share.
II.
OWNERSHIP OF THE EXTENSION DITCH
The court found that the Baca Company and the Joint Companies were co-owners of the ditch from the headgate to the arroyo and of the flume across the arroyo. No objection has been made to the decree in these respects.
The court found that the Joint Companies were the owners of the extension ditch and right-of-way therefor. We think it implicit in the decree that the plaintiffs’ rights in the extension ditch were acquired permissively and solely under the 1925 agreement. There was sufficient evidence to support this. The question arises as to whether those rights were to terminate upon the expiration of the 25-year term of the agreement or whether permanent rights in the ditch were granted. Obviously, the Baca Company would not contribute toward the cost of the flume without having some right in the extension ditch. Neither the 1925 agreement nor the 1961 contract, however, contain an express provision as to the ownership of the extension ditch, and the 1925 instrument contains no clue as to the rights, if any, of the plaintiffs after 1950.
The court indicated that an exceedingly close question was involved and stated that it was uncertain as to the correctness of its decision in this respect. Our sentiments are the same. We are unable to find sufficient evidence in the record to negate the conclusion of the trial court that the Joint Companies are the sole owners of the extension ditch.
We well might reverse the decree insofar as it relates to the extension ditch if the Joint Companies could prevent delivery of water to plaintiffs’ lands lying below the arroyo. The plaintiffs, however, have the right of *38 condemnation, which might be exercised to give them a right in the extension ditch. Colo. Const. Art. II, Sec. 14 and Art. XVI, Sec. 7; C.R.S. 1963, 148-3-1 et seq., as amended in part. The plaintiffs, therefore, are not deprived of a remedy.
III.
INJUNCTIONS
The court dissolved the preliminary injunction which restrained the defendants from interfering with the plaintiffs’ headgates. No error is assigned to that ruling. The defendants, however, claim error as to the court’s failure to enjoin the plaintiffs from interfering with the measurement and delivery of water to the plaintiffs by the Joint Companies. Their argument is predicated upon the provisions of the 1961 contract which give the Joint Companies the right to operate the ditch and upon C.R.S. 1963, 148-7-20. So far as the record discloses, the 1961 contract expired by its own terms in 1969. If the record disclosed that the contract were still in effect and would continue to be in effect for some time in the future, we would reverse in this particular. We can visualize that injunctive relief may be necessary in connection with the future delivery of plaintiffs’ water, but any such relief should come as a result of a new action filed in light of present and future circumstances and should not be predicated upon a history which does not necessarily represent current conditions.
Judgment affirmed.