No. 16,783.

GRANBY DITCH AND RESERVOIR COMPANY *v.*
HALLENBECK ET AL.
(255 P. [2d] 965)

Decided March 9, 1953.   Rehearing denied April 20, 1953.

Messrs. STEWART & BROWN, for plaintiff in error.

Messrs. GUENO & SPARKS, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE STONE delivered the opinion of the court.

PLAINTIFF in error corporation, a mutual ditch company, is the owner of the Granby Ditch, to which has been decreed ten cubic feet of water per second of time from Dirty George Creek, with a priority of May 1, 1894. The location of the headgate on the creek is established by the decree. The present action was brought to quiet title and confirm plaintiff's right to divert and use water intercepted by it below its headgate, including waters intercepted from certain springs below the headgate and from certain gulches and tributaries, including Sand Creek. No challenge is raised as to the findings of the trial court, but only to its conclusions of law based thereon. It found in part as follows:

"The location of the area involved is on the South slope of Grand Mesa in Delta County. Many streams flow from the Mesa, all emptying into the Gunnison River. Dirty George Creek, hereinafter referred to as George Creek, is the main stream involved in this proceeding. East of George Creek is a small stream, Sand Creek, which is a tributary of George Creek. East of Sand Creek is Williams Creek, and East of Williams Creek is Ward Creek, and the next stream East is Surface Creek. There are several gulches which flow into the several streams. Also there are several tributaries to George Creek, the main one being Camp Creek. All of these streams come together in what is here designated Tongue Creek * * *.

"Defendants hold decrees in the Tongue Creek drainage area; the point of diversion of some being from George Creek, others from Camp Creek, others from Tongue Creek. Some of these decrees are prior and some subsequent to the 10 second feet decree of the plaintiff. * * *

"Plaintiff's ditch was constructed so as to take water from George Creek and carry the water across to Williams Creek. The water is then dropped into Williams Creek and is taken from Williams Creek by its stockholders, most of the stockholders having ditches from Wil-

liams Creek, to their lands. Others carry their water in a ditch from Williams Creek across to Ward Creek, then take their water from either this ditch or Ward Creek. Williams and Ward come together. * * *

"Plaintiff's ditch intercepted and carried to Williams Creek the waters of certain springs near the head of its ditch on George Creek and Sand Creek and its tributaries, except as there might be an overflow in the ditch occasioned by snow or ice dams, or ice dam stoppage, or other dams forming, or breaks in the ditch. Also there is some seepage from the ditch from time to time depending upon its condition, into Sand Creek. As a practical proposition from 1894 until 1950 the Court finds the Granby Ditch during the periods when the water officials were administering water from the watershed in question, intercepted and carried to Williams Creek the waters of said springs and the waters of Sand Creek and its tributaries. Such waters were then put to a beneficial use by the stockholders of the plaintiff. * * *

"The fact that plaintiff's ditch did intercept the Sand Creek water and the water from the springs above mentioned, and the fact that same were being carried to Williams and Ward Creeks, was known to the water users who could be adversely affected. * * *

"The evidence conclusively shows, and the Court finds, that the plaintiff for a long period of time, probably in excess of 50 years, but in any event in excess of 30 years, has actually used the water in question; that such use has been open and notorious, continuous and uninterrupted; that insofar as other parties had a right to use the water, it was hostile and exclusive of such rights. * * *

* * * "the Court finds that Dirty George Creek is over-appropriated, and that the waters of Sand Creek, had they not been intercepted by the plaintiff, would have been used to fill other decrees upon Dirty George Creek; * * *."

Based upon its findings of fact, the court's conclusions of law were in part as follows:

* * * "To construe this as giving the plaintiff the right to take water from Sand Creek and its tributaries would mean plaintiff had additional points of diversion not named in its decree. This Court has now no right to enlarge the decree in question to make it include waters not provided for therein. In general an appropriator of water from a stream is confined to waters available at his point of diversion, and while this includes waters in tributaries of the stream, it must be waters from tributaries that would be available at the point of diversion. * * *

"The plaintiff's theory is that for a long period of time; that is, since its ditch was first constructed in 1894, there has been available to it and used by it waters of Sand Creek and its tributaries and waters of certain springs near the head of the ditch, for the purpose of filling its 10 foot decree; that the water officials have recognized these waters as being available to plaintiff and have distributed to plaintiff's stockholders the 10 foot decree based upon the waters available to the ditch; that is, George Creek and Sand Creek water. The Court has found that as a matter of fact this contention is correct. The Court does not believe that this long-followed custom can establish in plaintiff the right to have its decree filled from points of diversion other than that named in the decree.

"Plaintiff's next contention is that it holds a prescriptive right to the use of the waters from the springs near its headgate and the waters of Sand Creek and its tributaries. The Court has found plaintiff has used this water for a period long in excess of the statute of limitations; that such use was open and notorious, and that insofar as anyone sought to interfere therewith, such interference was not successful in stopping plaintiff's use prior to 1950.

"The question here involved is whether one who has

failed to obtain decree in statutory proceedings has the right to assert in equity that because of adverse use he is entitled to continue the use of the water in question. The Court believes that the answer to this question must be in the negative."

We think the trial court correctly answered both plaintiff's contentions. As to the first: We do not have involved here the fact of erroneous location of the headgate, as in *Corey v. Long,* 111 Colo. 146, 138 P. (2d) 930, or as in *Graeser v. Haigler,* 117 Colo. 197, 185 P. (2d) 781. Rather, we have a right asserted by virtue of a decree to water from one tributary, to divert water from another tributary, crossed and intercepted by claimant's ditch. Whether the Sand Creek diversion was by the same ditch or a separate one, is not material. The right decreed was from Dirty George Creek only, and was for diversion therefrom at a point above its junction with Sand Creek, therefore there was no right decreed to water from the latter.

As to the second contention: Plaintiff makes no claim to having used adversely all or part of any specific decreed water right belonging to another. Rather, it seeks to establish a new right prior to those of other appropriators on the stream system, based on its actual, but undecreed, appropriation and use prior to theirs, and further based on alleged abandonment by all other users, as evidenced by their permitting plaintiff's continued use. Unfortunately for plaintiff, the subsequent appropriators appeared at statutory adjudication proceedings where their priorities were regularly proven and established and thereby became res judicata. It was incumbent on plaintiff also to appear at such proceedings and establish its date of priority out of Sand Creek. Having failed so to do, the priorities as decreed became final, and plaintiff lost its relative right as to those so decreed. True, as plaintiff urges, even rights so adjudicated may be lost by abandonment, but, in such case, the priority abandoned does not continue and go to an-

other by virtue of his use of the water; rather, the right itself ceases to exist and the water theretofore properly claimed under it goes to fill subsequent appropriations in their order of decreed priority. True, also, as plaintiff urges, a water right may be acquired by prescription in proper case, but where, as here, the water rights on a stream are decreed, prescriptive right must result from adverse use of an already existing and decreed priority, not from an independent and undecreed claim against all other users from the stream.

Plaintiff relies on *Nicoloff v. Bloom Land and Cattle Company*, 100 Colo. 137, 66 P. (2d) 333. There, plaintiff company, as here, had intercepted and captured flood and spring waters by means of its ditch, which it mingled with the water taken from the river under its decreed priority, and claimed independent of, and in addition to, its river water. Defendant Nicoloff dug a parallel ditch above that of plaintiff, whereby he intercepted and diverted the waters which for long had been captured and used by plaintiff. We held that while the decree measured the rights of the company to divert water from the river, it did not curtail its right to make further appropriations of waters intercepted and captured by means of its ditch, and said: "And any such further appropriation is not defeated by the fact that it has not yet been, and may never be, protected by a decree, *unless of course one claiming adversely should hereafter successfully attempt to obtain a decree for priority as to the same waters in a proper proceeding.*" (Emphasis supplied.)

In the instant case, those claiming adversely have successfully attempted to obtain a decree for priority as to the same water in a proper proceeding, and therefore they may defeat the claim of plaintiff to further appropriation of the water of Sand Creek intercepted by its ditch.

Plaintiff further relies on *Lomas, Executrix v. Webster*, 109 Colo. 107, 122 P. (2d) 248. In that case, the

water in dispute was seepage water which "if left to itself would never have reached a natural stream," therefore under our statute an appropriator could not by his appropriation acquire a right superior to that of the owner of the land, and we held that the landowner's statutory right to such nontributory water could be lost by prescription. No such issue is raised in the instant case.

The judgment is affirmed.