Ralph L. ARCHULETA,
Plaintiff–Appellant

v.

Theodore GOMEZ, Defendant–Appellee.

No. 08SA109.

Supreme Court of Colorado,
En Banc.

Jan. 20, 2009.

Max I. Exline, Pueblo, Colorado, Attorney for Plaintiff–Appellant.

MacDougall, Woldridge & Worley, P.C., Henry D. Worley, Colorado Springs, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

Plaintiff/Appellant Ralph L. Archuleta appeals a judgment entered by the District Court for Water Division No. 2. The judgment denied and dismissed Archuleta's complaint for an injunction against Theodore Gomez seeking restoration of three ditch rights-of-way and delivery of water through the ditches. The water court ruled that Gomez adversely possessed, and is now the owner of decreed irrigation water rights deeded to Archuleta in the: (1) Manzanares Ditch No. 1 (priority 26), (2) Archuleta Ditch (priority 30), and (3) Manzanares Ditch No. 2 (priority 31), all diverting from the Huerfano River in the Arkansas River Basin. The water court also determined that Archuleta's claim for an injunction against Gomez for interference with Archuleta's use of the Archuleta Ditch, priority 30, was substantially frivolous and awarded attorney's fees to Gomez in the amount of $2,665.00.

On appeal, Archuleta contends that Gomez has not satisfied his burden of proof to demonstrate the first element of adverse possession in a water case: actual beneficial use of another person's adjudicated water right, exclusively, hostilely, and adversely to the owner. Archuleta also contends the water court erred in awarding attorney's fees against him in regard to his injunction claims relating to the Archuleta Ditch.[1]

■ Adverse possession law in Colorado prevents a claimant from adversely possessing water that is within a surface stream or tributary aquifer, but allows private water

---

1. Archuleta presented the following issues for review: (1) whether the trial court erred in finding the requirements of the 18–year statute of limitations and adverse possession statute had been met, where there was no evidence the defendant made actual, continuous, and exclusive use of all of the plaintiff's water; (2) whether the trial court erred in failing to require the defendant to prove his alleged adverse use of the plaintiff's water was pursuant to a valid appropriation and was taken in priority; and (3) whether the trial court erred in finding that the plaintiff's claim as to the Archuleta Ditch (priority 30) was substantially frivolous and awarding attorney's fees.

users within an irrigation ditch to adversely possess against each other behind the headgate, that is, after the water has been diverted from the stream or aquifer pursuant to an adjudicated water right. We agree with Archuleta that, to succeed in his adverse possession claim, Gomez must demonstrate that he exclusively, hostilely, and adversely made an actual beneficial consumptive use of all or a portion of Archuleta's deeded irrigation water right interests on the Gomez lands for the 18–year adverse possession period, not just that he intercepted water in the three ditches belonging to Archuleta's deeded interests in the adjudicated water rights.

█ On the other hand, to succeed on his injunction action against Gomez to restore water deliveries through the three ditches, Archuleta must show that he did not abandon all of his water rights to the stream. All or any portion of an abandoned water right belongs to the stream, and neither an injunction nor an adverse possession action can revive an abandoned water right.

The water court awarded all of Archuleta's deeded interests in the adjudicated water rights to Gomez. However, the facts contained in the record of this case suggest that a portion of Archuleta's adjudicated water rights may have been abandoned to the stream, a portion may have been adversely possessed by Gomez, and a portion may still belong to Archuleta. A quantification of the use Gomez and Archuleta actually made of the historical beneficial consumptive use belonging to the perfected irrigation water rights of their common predecessor-in-interest, Sabino Archuleta, is required to determine how much, if any, of the beneficial consumptive use belonging to Archuleta's deeded interests now belongs to Gomez or Archuleta, or has been abandoned to the stream.

Even though the amount of water involved in this case may appear to be relatively small, the Arkansas River Basin wherein the Huerfano River is located is over-appropriated,[2] adjudicated water rights with senior priorities are valuable, and the

issues the parties have chosen to contest are highly significant to the water law.

Given the present state of the record, we determine that Archuleta has not sustained his burden of proof in the injunction action to restore ditch rights-of-way and water deliveries through them; nor has Gomez sustained his burden of proof to demonstrate adverse possession of all or any portion of Archuleta's deeded interests in the adjudicated irrigation water rights. Both parties deserve an opportunity to provide supplementary evidence consistent with the legal standards applicable to adverse possession and abandonment water law, if they choose to do so.

Accordingly, we reverse the judgment of the water court and remand this case for further findings of fact and judgment regarding both the injunction and adverse possession claims in this case.

### I.

Archuleta sought a preliminary injunction requiring Gomez to restore ditches and allow his water to pass through the ditches to his parcel, pursuant to his record title to adjudicated irrigation water rights in three ditches: (1) Manzanares Ditch No. 1 (priority 26), (2) Archuleta Ditch (priority 30), and (3) Manzanares Ditch No. 2 (priority 31). Each of these ditches divert from the Huerfano River at separate headgates and only a handful of owners have rights in the adjudicated priorities for these ditches. Gomez contested Archuleta's request for a preliminary injunction on the basis of adverse possession.

Archuleta and Gomez both derive record title for their land, as well as water rights adjudicated for the three ditches, from a common predecessor-in-interest, Sabino Archuleta, Archuleta's grandfather. Gomez acquired his upper parcel and water rights from Sabino Archuleta in 1962, and his lower parcel and water rights from Sabino Archuleta in 1968. Lupe Archuleta, Sabino's son and Archuleta's father, obtained his parcel and water rights in 1967, the year before Gomez acquired the lower parcel from Sabino. Ar-

---

**2.** *Empire Lodge Homeowners' Ass'n v. Moyer,* 39 P.3d 1139, 1144 n. 3 (Colo.2001) ("[t]he natural surface water and groundwater system of the Arkansas River is severely over-appropriated ...").

chuleta obtained his parcel and water rights in the three ditches from Lupe Archuleta's estate in 1991.

The deed of May 11, 1962, from Sabino Archuleta to Gomez provides for:

> An undivided one-half interest in the following lands and water rights: SW1/4 SW1/4 of Section 34, Township 26 South, Range 71 West of 6th P.M.; NW1/4 NW1/4 of Section 3; NE1/4 NE1/4 of Section 4, Township 27 South, Range 71 West of the 6th P.M.; containing 120 acres, more or less;
>
> *Together with all water and water rights appurtenant thereto, and particularly a pro rata interest in the Archuleta Ditch and 1.24 cu. ft. of water of the 3.68 cu. ft. of water allowed to flow therein under priority 30.*

(Emphasis added). This 120–acre parcel owned by Gomez was referred to as the "upper parcel" during the trial.

The land and water rights description contained in the October 20, 1967, deed from Sabino Archuleta to Lupe Archuleta reads as follows:

> West 18 acres of NE1/4 NW1/4 Section 2, Township 27 South, Range 71 West of the 6th P.M., *together with 18/120s of the following described water rights: Interest in the Archuleta Ditch, and all of its 1.24 cubic feet of the 3.68 cubic feet of water per second of time allowed to flow thereun under Priority No. 30; 18/120s interest in a 1/6 interest in the Manzanares Ditch plus its 1/6 of the water allowed to flow therein under Priority No. 26; 18/120s in a 1/2 interest in the Manzanares No. 2 Ditch and 1/2 of the water allowed to flow therein under Priority No. 31[;] together with his interest in those ditches necessary to move and transport said water rights.*

(Emphasis added). Archuleta acquired this 18–acre parcel and water rights in the three ditches from Lupe Archuleta's estate through the deed dated August 30, 1991.

The deed of March 27, 1968, from Sabino Archuleta to Gomez provides:

> Township 27 South, Range 71 West of the 6th P.M. Section 2: E1/2 NW1/4; NW1/4 NW1/4 excepting therefrom the following described tract, to-wit: Beginning at the Southwest corner of the NE1/4, NW1/4, thence North 1320 feet[,] thence East 594 feet, then South 1320 feet, thence West 594 feet to the place of beginning; *Together with all grantors rights and interest in the Archuleta Ditch being 102/120ths of 1.24 cu. ft. of water allowed to flow therein under priority 30, together with the same proportionate interest in the ditch, and 102/120ths of 1/6th of the 3.34 cu. ft. of water allowed to flow in the Manzanares Ditch priority 26, and a like interest in the ditch 102/120ths interest in 1/2 of .7 cu. ft. of water allowed to flow in Manzanares Ditch # 2 under priority 31* and a like interest in the ditch and any and all, other ditches, ditch rights, water and water rights appurtenant thereto[.]

(Emphasis added). This 102–acre parcel owned by Gomez was referred to as the "lower parcel" during the trial. It surrounds and encloses Archuleta's 18–acre parcel.

The layout of the various parcels and the three ditches appears in Exhibit No. 1 in the record, an annotated aerial photograph. It shows the location of Gomez's and Archuleta's parcels and the three ditches, in relation to each other and other property owners north of the Huerfano River, near Redwing, Colorado in the Upper Huerfano River drainage of the Arkansas River Basin. Archuleta Ditch runs through Gomez's upper parcel. Exhibit No. 1 shows this ditch ending near the boundary of the Fortune 1 and Harms properties at the boundary of Gomez's lower parcel. Manzanares Ditch No. 1 runs through the western part of Gomez's lower parcel, across Archuleta's parcel, and onto the eastern part of Gomez's lower parcel. Manzanares Ditch No. 2 runs through the Fortune 1 and Harms parcels, and ends on the western side of Gomez's lower parcel.

The evidence shows, and the parties agree, that Gomez plowed under Manzanares Ditch No. 2 on the western side of his lower parcel, so that the ditch no longer runs onto Archuleta's property, and that Gomez intercepted water that would otherwise flow through the Manzanares Ditch No. 1 onto Archuleta's parcel. Although the Archuleta Ditch runs through Gomez's upper parcel, the water

court found that it had not extended into Gomez's lower parcel or onto Archuleta's parcel at least since 1968, when Gomez acquired the lower parcel.

Gomez claims in this litigation that he now owns, by adverse possession, all of Archuleta's deeded interests in the adjudicated priorities for the three irrigation ditches. In doing so, Gomez does not assert color of title under the seven year statute, section 38–41–108, C.R.S. (2008). Instead, Gomez relies on the following evidence to establish adverse possession: 18 years of Lupe Archuleta's non-use of the water rights commencing in 1968; Gomez's action in plowing up the Manzanares Ditch No. 2, and putting the water into a sealed-off pipe on the west side of his lower parcel so that the ditch no longer extends onto Archuleta's parcel; Gomez's action in building a by-pass device that intercepts water that would otherwise flow through Manzanares Ditch No. 1 from the western side of Gomez's lower parcel onto Archuleta's parcel; the existence of Archuleta Ditch on Gomez's upper parcel but the ditch's non-existence on his lower property or on Archuleta's parcel; the number of days Gomez has in rotation agreements with other water rights owners for the three ditches, coupled with Lupe Archuleta's absence in the rotation agreements; and Lupe Archuleta's non-participation in ditch maintenance or assessment payments since Gomez acquired the lower parcel in 1968.

The water court ruled that Gomez had adversely possessed all of Archuleta's water rights in the three ditches, focusing primarily on evidence of the rotation schedules for the three ditches that did not include Archuleta. However, even though Gomez may have intercepted water in the three ditches belonging to Archuleta's deeded interests, the present record does not contain evidence that Gomez made actual beneficial use of all or any portion of Archuleta's deeded irrigation water rights, in addition to making actual beneficial use of his own water rights.

Moreover, Gomez himself testified that Archuleta's parcel is sub-irrigated by tail water flowing from the Gomez property into Archuleta's property, suggesting that Lupe Archuleta may have been making consumptive use of all or a portion of his irrigation water without the necessity of using the ditches:

> Mr. Worley: Now, have they (Lupe Archuleta or his son Ralph Archuleta) used tail water from time to time?

> Mr. Gomez: Well, he gets all my tail water. Sub-irrigated. Right now. But a few years he made a trench because—he made a drain ditch to drain his meadow because it was getting flooded.* * *

> Ms. Yoxey: Let me try to be a little bit clearer. Mr. Archuleta built a ditch running north and south to catch the water that run on the 31 (Manzanares Ditch No. 2)?

> Mr. Gomez: Right. * * *

> Ms. Yoxey: Isn't it true that he did that in order to keep his property from flooding with that water?

> Mr. Gomez: Well, the undergrowth, under water, it will go anywhere. If he won't have built that trench, he would have been flooded. Through under. * * *

> Mr. Worley: Now, the water that would run into the drain ditch that Ralph Archuleta constructed, is that water directly from the number 31 ditch or would that be tail water from the 31 ditch?

> Mr. Gomez: That would be—well, I irrigate the upper part. On the 31.

> Mr. Worley: And then does it run—

> Mr. Gomez: And that's sub-irrigate to his place.

A logical inference from Gomez's testimony is that Archuleta's parcel, from when Lupe Archuleta owned it to the present day, may have been sufficiently irrigated from tail water produced from Gomez's diversion of one or more of Archuleta's adjudicated water rights. Thereby, Lupe Archuleta, not Gomez, could have been making actual beneficial use of Archuleta's deeded interest in water rights that Gomez claims to now own through adverse possession.

In his pre-trial brief to the water court, Archuleta contended that Gomez must quantify the beneficial use of Archuleta's water that Gomez claims to have made exclusively, hostilely, and adversely for irrigation on his parcels to the exclusion of Archuleta's use

during the 18–year statutory period: "Mr. Gomez absolutely must show he possessed the exact amount of water contained in Mr. Archuleta's deed for 18 years uninterrupted to prevail. To make the calculations which convert days or hours of use into fractional shares requires an expert, such as a mathematician or a water engineer." Archuleta's trial brief also pointed out that "[w]ater that is abandoned would go back into the stream, not to Mr. Gomez."

We agree that a quantification of actual beneficial use must be made in this case. We also agree with the court of appeals' prior holding in this case, *Archuleta v. Gomez*, 140 P.3d 281, 287 (Colo.App.2006), that, because an adverse possession water rights case involves "both the enforcement of a water right and an assertion that the right to use the water should be terminated and awarded to another based on beneficial use of the water," the water court is the only appropriate court to hear it. Ditch right-of-way questions involved in the case are within the ancillary jurisdiction of the water court. *Id.; see also* Maria E. Hohn, *Colorado Water Court's Exclusive Jurisdiction For The Adverse Possession Of Water: Archuleta v. Gomez*, 10 Univ. Den. Water L.Rev. 135 (2006).

## II.

Given the present state of the record, we determine that Archuleta has not sustained his burden of proof in the injunction action to restore ditch rights-of-way and water deliveries; nor has Gomez sustained his burden of proof to demonstrate adverse possession of all or any portion of Archuleta's deeded interests in the adjudicated irrigation water rights of these ditches. Both parties deserve an opportunity to provide supplementary evidence consistent with the legal standards applicable to adverse possession and abandonment water law, if they choose to do so. Accordingly, we reverse the judgment of the water court and remand this case for further findings of fact and judgment regarding both the injunction and adverse possession claims in this case.

## A.

### Standard of Review

This case involves ditch rights-of-way, adjudicated water rights, deeds to both, and a conflict between neighbors regarding claimed interference with ditch rights-of-way and irrigation water rights. Since the initial session of the Colorado Territorial Legislature in 1861, ditch rights-of-way and water rights— separate real property interests intertwined with each other—have been key features of the water law. *See Tonko v. Mallow*, 154 P.3d 397, 402–04 (Colo.2007).

### 1. Ditch Rights–of–Way and Water Rights

The 1861 "An Act to Protect and Regulate the Irrigation of Lands," 1861 Colo. Territorial Laws, § 2, 67–68, provided for obtaining irrigation water use rights from the stream, together with the rights-of-way necessary to divert and convey the appropriated water to its place of beneficial use:

**Section 1.**

That all persons who claim, own or hold a possessory right or title to any land or parcel of land within the boundary of Colorado Territory, as defined in the Organic Act of said Territory, when those claims are on the bank, margin or neighborhood of any stream of water, creek or river, shall be entitled to the *use of the water* of said stream, creek or river, *for the purposes of irrigation, and making said claims available, to the full extent of the soil, for agricultural purposes.*

*Id.* at 67 (emphasis added).

**Section 2. Laws**

That when any person, owning claims in such locality, has not sufficient length of area exposed to said stream *in order to obtain a sufficient fall of water necessary to irrigate his land,* or that his farm or land, used by him for agricultural purposes, is too far removed from said stream and that he has no water facilities on those lands, he shall be entitled to *a right of way* through the farms or tracts of land which lie between him and said stream, or the farms or tracts of land which lie above and

below him on said stream, for the purposes as herein before stated.

*Id.* at 67 (emphasis added).

In *Yunker v. Nichols,* our territorial predecessors considered ditch rights-of-way so important to the establishment and exercise of water rights that they cautioned the legislature against ever repealing the 1861 statute:

> When the lands of this territory were derived from the general government, they were subject to the law of nature, which holds them barren until awakened to fertility by nourishing streams of water, and the purchasers could have no benefit from the grant without the right to irrigate them. *It may be said, that all lands are held in subordination to the dominant right of others, who must necessarily pass over them to obtain a supply of water to irrigate their own lands, and this servitude arises, not by grant, but by operation of law.*

1 Colo. 551, 555 (1872) (opinion by Chief Justice Hallett) (emphasis added).

> I conceive that, with us, *the right of every proprietor to have a way over the lands intervening* between his possessions and the neighboring stream *for the passage of water for the irrigation of so much of his land as may be actually cultivated,* is well sustained by force of the necessity arising from local peculiarities of climate....

*Id.* at 570 (concurring opinion of Justice Wells) (emphasis added).

> *It seems to me, therefore, that the right springs out of the necessity, and existed before the statute was enacted, and would still survive though the statute were repealed.*
>
> If we say that the statute confers the right, then the statute may take it away, which cannot be admitted.

*Id.* (emphasis added).

The importance of ditch rights-of-way to the establishment and exercise of water rights in the public's water resource expressly appears in the 1876 constitution for the new state of Colorado:

**Section 5. Water of Streams of public property.**

The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.

Colo. Const. art. XVI, § 5.

**Section 6. Diverting unappropriated water-priority preferred uses.**

The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes.

*Id.* at § 6.

**Section 7. Right-of-way for ditches, flumes.**

All persons and corporations shall have the right-of-way across public, private and corporate lands for the construction of ditches, canals and flumes, for the purpose of conveying water for domestic purposes for the irrigation of agricultural lands, and for mining and manufacturing purposes, and for drainage, upon payment of just compensation.

*Id.* at § 7.

█ In more recent times, as throughout the state's history, Colorado's judiciary has been called upon to resolve conflicts between competing claims involving rights-of-way and water rights. "In this state the right to the use of water for irrigation is deemed real estate, and is a distinct subject of grant, and may be transferred either with or without the land for which it was originally appropriated...." *Davis v. Randall,* 44 Colo. 488, 492, 99 P. 322, 324 (1909).

Our decision in *Roaring Fork Club, L.P. v. St. Jude's Co.,* 36 P.3d 1229, 1237–38 (Colo.

2001), disapproves "self-help" remedies whereby a land owner extinguishes or alters a ditch that delivers water belonging to the adjudicated rights of others. Such "nonconsensual, unilateral alterations jeopardize valuable vested property rights both in the easement and in the water rights exercised by means of the ditch." *Id.* at 1238.

As to future disputes involving rights-of-way and water rights, we delineated a course of negotiation and, failing that, recognized that the owner of the servient estate may file a declaratory judgment action for the purpose of allowing ditch alterations that also continue to provide the owners of the water rights their water without an increase in cost to them. *Id.* at 1237–38.

Nevertheless, "self-help" to ditch rights-of-way and water rights continues to exist in the form of adverse possession. Colorado's adverse possession statutes, sections 38–41–101(1) & (2), C.R.S. (2008) (18 year statute), and 38–41–106, C.R.S. (2008), (7 year statute), recognize that ditch rights-of-way and water rights, both of which are real property rights in this state, can be adversely possessed against their private owners. Thus, owners of such rights must remain vigilant in the protection of their interests.

### 2. Adverse Possession and Abandonment Water Law

■ In Colorado, a party seeking to establish ownership of another person's water right by adverse possession has the burden of establishing that such possession is actual, adverse, hostile, and under claim of right, as well as open, notorious, exclusive, and continuous for the prescribed statutory period. *Bagwell v. V–Heart Ranch, Inc.,* 690 P.2d 1271, 1273 (Colo.1984). Such a claim can be made only as between rival claimants to the possession and use of water, for the statutory period, behind the headgate, that is, after the water's diversion from the stream pursuant to an adjudicated water right. *Mountain Meadow Ditch and Irrigation Co. v. Park Ditch and Reservoir Co.,* 130 Colo. 537, 539, 277 P.2d 527, 528 (1954).

■ Section 38–41–101(2), C.R.S. (2008), of Colorado's adverse possession statutes provides that no adverse possession claim may be made against "any . . . water, water right . . . whatsoever dedicated to or owned by the state of Colorado." Accordingly, Colorado law does not recognize a claim of adverse possession against the stream or against appropriators on the stream. Ward H. Fischer, *Adverse Possession of River Flows,* 23 The Colorado Lawyer, June 1994, at 1313, 1315.

■ A party may not adversely possess water from a stream because a water right does not represent actual ownership of any part of the public's water in the stream, but only the right to claim and divert at the headgate of the diversion works the amount of water actually needed for beneficial use, up to the volume of the adjudicated priority. *Mountain Meadow Ditch and Irrigation Co.,* 130 Colo. at 539, 277 P.2d at 528 ("The unappropriated water of every stream is the property of the public against which title by adverse user may not be acquired."); *see also Granby Ditch & Reservoir Co. v. Hallenbeck,* 127 Colo. 236, 241–42, 255 P.2d 965, 968 (1953) (stating that adjudicated water rights "may be lost by abandonment, but, in such a case, the priority abandoned does not continue and go to another by virtue of his use of the water; rather, the right itself ceases to exist and the water theretofore properly claimed under it goes to fill subsequent appropriations in their order of decreed priority").

■ Beneficial use is the most fundamental aspect of Colorado's prior appropriation water law. Section 6, Article XVI, of the Colorado Constitution provides, "The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied." Accordingly, a water use right adjudicated for the purpose of recognizing its priority is a valuable property right that a public or private person or entity can obtain by making an actual beneficial use of a portion of the public's unappropriated water resource. *High Plains A & M, LLC v. Se. Colo. Water Conservancy Dist.,* 120 P.3d 710, 717 (Colo.2005); *see also Chatfield E. Well Co., Ltd. v. Chatfield E. Prop. Owners Ass'n,* 956 P.2d 1260, 1268 (Colo.1998); *New Mercer*

*Ditch Co. v. Armstrong,* 21 Colo. 357, 365–66, 40 P. 989, 992 (1895).

 The value of the water right resides in its adjudicated priority vis-à-vis all other adjudicated priorities to the use of waters of the natural stream, which includes surface water and tributary ground water. *Empire Lodge Homeowners' Ass'n v. Moyer,* 39 P.3d 1139, 1147–48 (Colo.2001). Under section 37–92–103(12), C.R.S. (2008), " 'Water right' means a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same." *See Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson,* 990 P.2d 46, 53–54, 58 (Colo.1999). The primary value of a water right resides in its priority relative to other water rights and the right to use the resource, not in the continuous tangible possession of the resource. *Navajo Dev. Co., Inc. v. Sanderson,* 655 P.2d 1374, 1377 (Colo.1982).

 The Colorado doctrine of water use is propelled by need and bounded by scarcity. Diversion of water by itself cannot ripen into a water right if the water is not beneficially used; the basis, measure, and extent of a Colorado appropriative water right turns upon its actual beneficial use. *Santa Fe Trail Ranches,* 990 P.2d at 53–54; *see also Shirola v. Turkey Cañon Ranch Ltd. Liab. Co.,* 937 P.2d 739, 747–48 (Colo.1997). Read into every decree for a water right is the implied condition that no more water can be diverted from the stream than is needed for an actual beneficial use. *Weibert v. Rothe Brothers,* 200 Colo. 310, 316, 618 P.2d 1367, 1371 (1980) ("The owner of a water right has no right as against a junior appropriator to waste water, i.e., to divert more than can be used beneficially ... [t]hese limitations are read into every water right decree by implication.") (citing *Pulaski Irrigating Ditch Co. v. City of Trinidad,* 70 Colo. 565, 203 P. 681 (1922); *Baca Ditch Co. v. Coulson,* 70 Colo. 192, 198 P. 272 (1921); *Fort Lyon Canal Co. v. Chew,* 33 Colo. 392, 81 P. 37 (1905)).

 The nature of the property at issue in an adverse possession case is critical in determining what acts by the claimant are required for adverse possession. *Palmer Ranch, Ltd. v. Suwansawasdi,* 920 P.2d 870, 873 (Colo.App.1996). Adjudicated irrigation water rights are at issue in this case. Although the typical decree for an irrigation water right specifies only a flow rate of water taken through the headgate, expressed in cubic feet per second,[3] the actual measure of a perfected irrigation water right consists of the amount of water, expressed in acre feet, beneficially consumed in exercising the right over a representative historical period of time in accordance with its decree at its place of use. *High Plains A & M, LLC,* 120 P.3d at 710 ("Over an extended period of time a pattern of historic diversions and use under the decreed right at its place of use will mature and become the measure of the appropriation for change purposes."); *In re Application for Water Rights of Midway Ranches Prop. Owners' Ass'n Inc.,* 938 P.2d 515, 521 (Colo.1997).

 In *Weibert,* we emphasized the longstanding doctrine that water rights decreed for irrigation are limited to the "duty of water." 200 Colo. at 316–17, 618 P.2d at 1371. This principle of beneficial use recognizes that any given acreage of cropland needs and is limited to a productive amount of water. The duty of water is:

> [T]hat measure of water, which, by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon. It is not a hard and fast unit of measurement, but is variable according to conditions.

*Id.* Thus, water cases often necessitate testimony analyzing the nature and extent of crop production on various parcels of land, in order to determine the extent of allowable beneficial use that can be made of the water right. *See, e.g., Farmers Reservoir and Irrigation Co. v. City of Golden,* 44 P.3d 241, 255

---

**3.** *Farmers Reservoir & Irrigation Co. v. City of Golden,* 44 P.3d 241, 246 (Colo.2002); *In re Application for Water Rights of Midway Ranches* *Prop. Owners' Ass'n Inc.,* 938 P.2d 515, 521 (Colo.1997).

(Colo.2002) (recognizing that "use of water for irrigation is limited in time and volume by the needs of the land ...") (citations omitted). The amount of beneficial consumptive use belonging to an irrigation water right is typically demonstrated by proof addressing a number of factors centering on the crops that have been grown on the land actually irrigated. *See Developing a Water Supply in Colorado: the Role of an Engineer*, 3 Univ. Denv. Water L.Rev. 373, 379–80 (2000).

In addition to standing for the proposition that an adverse possession claimant must demonstrate actual beneficial use of the deeded owner's water right, our cases establish that no person can revive or adversely possess an abandoned water right. *Farmers Reservoir & Irrigation Co. v. Fulton Irrigating Ditch Co.*, 108 Colo. 482, 486, 120 P.2d 196, 199 (1941) ("After abandonment becomes an accomplished fact, the attempt to exercise the abandoned right differs in no respect from an attempt by one who never had a right to assert...."); *Se. Colo. Water Conservancy Dist. v. Twin Lakes Associates, Inc.*, 770 P.2d 1231, 1238 (Colo.1989) ("Any attempt by the former owner to claim a priority relating back to the priority date of the former right is of no avail."). Thus, adverse possession cases should address whether the deeded owner abandoned the water right. *See, e.g., Nesbitt v. Jones*, 140 Colo. 412, 421, 344 P.2d 949, 953 (1959); *Archuleta*, 140 P.3d at 286. If the right has been abandoned, the water belonging to it for beneficial use reverts to the stream, and the right cannot be revived through adverse possession.

Instead, the adverse possession claimant must show that the adjudicated irrigation water right at issue was continuously put to beneficial use on lands irrigated by the claimant, rather than the deeded owner, during the statutory period. Section 37–92–402(10), C.R.S. (2008), of Colorado's 1969 Water Right Adjudication and Administration Act provides that ten or more years of non-use of a water right by the person entitled to use the right creates a rebuttable presumption of abandonment to the stream of the right, or that part of the right, which has not been exercised. Abandonment is defined as "the termination of a water right *in whole or in part* as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder." § 37–92–103(2), C.R.S. (2008) (emphasis added).

A presumption of abandonment requires the concurrence of two elements: non-use for the statutory period (ten years) and the intent to abandon. *Se. Colo. Water Conservancy Dist.*, 770 P.2d at 1238. This presumption may be rebutted by evidence of the owner's intent not to abandon the right; evidence rebutting the presumption of abandonment may include such acts as loaning or leasing the water to others or good faith efforts to sell the water right. *See* § 37–80.5–104.5, C.R.S. (2008); § 37–83–105, C.R.S. (2008); § 37–92–103(2), C.R.S. (2008) (providing for tolling in specified circumstances); *Se. Colo. Water Conservancy Dist.*, 770 P.2d at 1238; *Knapp v. Colo. River Water Conservation Dist.*, 131 Colo. 42, 54–55, 279 P.2d 420, 425, 426 (1955); *Mason v. Hills Land & Cattle Co.*, 119 Colo. 404, 408, 204 P.2d 153, 155–56 (1949). Abandonment of a water right may occur in whole or in part; the amount of water abandoned reverts to the stream, to the benefit of other rights in order of their adjudicated priority. *Se. Colo. Water Conservancy Dist.*, 770 P.2d at 1238; *Rocky Mountain Power Co. v. White River Elec. Ass'n*, 151 Colo. 45, 51, 376 P.2d 158, 161 (1962). Evidence rebutting the presumption of abandonment may also be adduced by an adverse possession claimant who demonstrates his or her continuous use of the deeded owner's interest in the adjudicated water right.

As demonstrated by our cases, adverse possession is very difficult to establish.[4] Our

---

4. *See Bagwell v. V–Heart Ranch, Inc.*, 690 P.2d 1271, 1276 (Colo.1984) (remanding for consideration "of such additional questions as when, if at all, the eighteen-year period might have been satisfied; whether, during the times V–Heart or its predecessors used all of the Beecroft water, the circumstances of such use support or contradict Bagwell's claim of continuous adverse use; and, ultimately, whether Bagwell sustained his burden of proof"); *Farmer v. Farmer*, 720 P.2d

cases repeatedly reject such claims. *Id.; see also German Ditch & Reservoir Co. v. Platte Val. Irrigation Co.*, 67 Colo. 390, 178 P. 896 (1919); *Mountain Meadow Ditch and Irrigation Co.*, 130 Colo. 537, 277 P.2d 527 (1954). In *Loshbaugh v. Benzel*, 133 Colo. 49, 61–62, 291 P.2d 1064, 1070–71 (1956), we stated, "It is not reasonable to suppose that priority of right to water, where water is scarce, or likely to become so, will be lightly sacrificed or surrendered by its owner. Nor should the owner of such a right be held to have surrendered it or merged it except upon reasonably clear and satisfactory evidence." (citing *Rominger v. Squires*, 9 Colo. 327, 329, 12 P. 213, 214 (1886)).

We required the adverse claimant in *Loshbaugh* to prove that his possession to the claimed amount of water was actual, adverse, hostile to the owner and under a claim of right, and open, notorious, exclusive, and continuous. *Id.* The *Loshbaugh* case is instructive for the litany of evidence produced about lands that were or were not irrigated at various times, consensual arrangements between those irrigating from the ditch, unwarranted assumptions about percentage shares in the ditch understood or misunderstood at the time of purchase by successors-in-interest, and the wash-out and non-replacement of diversion works. Based upon the evidence in that case, we held the adverse possession claimant had not presented sufficient evidence to support his adverse possession claim. *Id.* at 63. ("[T]here is no competent evidence of adverse possession subsequent to 1922, for any period of time under any statute of limitations which would entitle plaintiff to one half of the water in the L and C Ditch by adverse possession.").

The fundamental question in an adverse possession water case is whether, under all the surrounding circumstances, the practices of water use between the rival claimants are consistent or inconsistent with the claimed adverse use. *V–Heart Ranch*, 690 P.2d at 1275–76. The water court should evaluate "all relevant circumstances surrounding the use of water in evaluating adverse possession claims to water rights." *Id.* at 1276.

We recognized in *V–Heart Ranch* that formal and informal arrangements between water right holders in an irrigation ditch are often "dictated more by day-to-day circumstances than by legal rights of ownership." *Id.* at 1275. Typically, rotation agreements involving irrigation rights indicate cooperation and permission among water users. By rotating the entire flow of the adjudicated priority for the ditch onto certain fields at various times in round robin fashion, the irrigators optimize use of the ditch's gravity flow to the irrigated fields served by the ditch. Such arrangements do not typically compromise the title interests of the individual irrigators, and do not demonstrate adverse possession except in unusual circumstances. For this reason, examining the issue of rotational water use, we have said that "the adoption of mutually agreeable rotation systems by the owners of water rights cannot be deemed conclusive proof of either the creation or the abandonment of particular ownership rights." *Id.; see also Strole v. Guymon*, 37 P.3d 529, 533 (Colo.App.2001) (concluding that the rotation system of a ditch could not be used to quantify the plaintiff's water rights and that the plaintiff's water rights "exist independently of any rotation agreement").

174, 176 (Colo.App.1986) (failing to show "hostile, adverse, exclusive, or notorious possession of some or all of the water rights"); *Loshbaugh v. Benzel*, 133 Colo. 49, 62, 291 P.2d 1064, 1071 (1956) ("[T]here is no evidence to be found in the record supporting Benzel's claim of adverse possession. To support the doctrine of adverse possession, such possession must be actual, adverse, hostile and under claim of right, and it must be open, notorious, exclusive and continuous. Plaintiff's adverse possession is not established by the evidence in this case.") (citations omitted); *Church v. Stillwell*, 12 Colo.App. 43, 54 P. 395,

397–98 (1898) ("The complaint does not set forth the facts which counsel himself says are necessary to constitute the prescriptive right. It is true that he alleges his possession and use from 1872 to 1892 to have been adverse, but he does not set forth any facts showing it to have been adverse."); *Clark v. Ashley*, 34 Colo. 285, 290, 82 P. 588, 589 (1905) (holding adverse possession of water had not been proven); *Saunders v. Spina*, 140 Colo. 317, 344 P.2d 469 (1959); *Upper Harmony Ditch Co. v. Stunkard*, 177 Colo. 6, 492 P.2d 631 (1972).

We summarize our precedent applicable to the "actual" use element of adverse possession in an irrigation water rights case. Because actual beneficial use is the basis, measure, and extent of an appropriative water right for irrigation in Colorado, an adverse possession claimant to an irrigation water right has the burden to establish, by a preponderance of the evidence, the amount of water expressed in acre feet belonging to the deeded owner's water right that the adverse claimant has placed to beneficial consumptive use.[5] Quantification proof is essential because the effect of a successful adverse possession claim is to transfer, in whole or in part, the ownership of the irrigation water right's beneficial consumptive use entitlement, under its adjudicated priority, from the deeded owner to the adverse claimant.

Water that an adverse possession claimant has intercepted in the ditch from the deeded owner's interest in the adjudicated irrigation water right, but which has not been beneficially consumed by either the claimant or the deeded owner, presumably has returned to the tributary aquifer or the surface stream. Mere diversion of water cannot be counted as an actual beneficial use upon which adverse possession can be founded because "to make [a diversion of water into a constitutional appropriation] it must be ... actually applied to the land." *High Plains A & M, LLC,* 120 P.3d at 717 (quoting *Farmers' High Line Canal & Reservoir Co. v. Southworth,* 13 Colo. 111, 114–15, 21 P. 1028, 1029 (1889)). In addition, return flow water belongs to the stream as part of the public's water resource for use by others in order of their decreed priorities. *Nevius v. Smith,* 86 Colo. 178, 181, 279 P. 44, 45 (1929) ("[W]e have held that seepage and percolation belong to the river.").

### B.

### Application to This Case

The water court awarded all of Archuleta's deeded interests in the adjudicated water rights to Gomez. However, the facts contained in the record of this case suggests that a portion of Archuleta's adjudicated water rights may have been abandoned to the stream, a portion may have been adversely possessed by Gomez, and a portion may still belong to Archuleta. A quantification of the use actually made by Gomez and by Archuleta is required in order to determine how much, if any, of the beneficial consumptive use belonging to Archuleta's deeded interests in the adjudicated irrigation water rights belongs to Gomez or Archuleta, or has been abandoned to the stream.

Neither Archuleta in his injunction claim against Gomez, nor Gomez in his adverse possession claim against Archuleta, has yet demonstrated the actual beneficial use of the water rights at issue on their parcels of land. This showing is essential to both Archuleta's injunction claim and Gomez's adverse possession claim. First, Archuleta must prove the water rights he seeks to compel Gomez to restore deliveries for have not been abandoned because, if Lupe Archuleta abandoned all or a part of Archuleta's deeded water rights to the stream, Archuleta will have suffered no injury, or a diminished injury, upon which the water court may base an injunction against Gomez. In addition, Gomez cannot possess water rights Lupe Archuleta abandoned because such water belongs to the stream for use through adjudicated water rights in order of priorities. Our most recent comprehensive discussion of Colorado's abandonment law occurred in *East Twin Lakes Ditches and Water Works, Inc. v. Board of County Commissioners of Lake County,* 76 P.3d 918 (Colo.2003).

Second, Gomez can successfully prove his adverse possession of all or a portion of the Archuleta rights only by demonstrating actual beneficial use of that water, to the exclusion of Archuleta, on lands Gomez owns. This water must be in an amount above that which Gomez had available to him, and used, in exercising his own decreed water rights during the statutory 18–year period. With-

---

5. Actual beneficial use of water is also the basis for abandonment. The presumption of abandonment arises when water is not put to beneficial use for a ten-year period. Thus, water which has been diverted but not put to beneficial use may still be found abandoned. *E. Twin Lakes Ditches and Water Works, Inc. v. Bd. of County Comm'rs of Lake County,* 76 P.3d 918 (Colo.2003).

out evidence of actual beneficial use of the water rights, Gomez has not shown "actual" use of the water rights as required to sustain a claim for adverse possession.

The water court based its adverse possession judgment on the following evidence produced by Gomez at trial. Gomez showed that he filled in one of the ditches that had historically run to Archuleta's land, Manzanares Ditch No. 2; he intercepted water bound for Archuleta's land through Manzanares Ditch No. 1; and the Archuleta ditch has not extended into Archuleta's land since at least 1968. Gomez also participated in rotational agreements regarding water delivery from the three ditches that did not include Lupe Archuleta. In addition, Lupe Archuleta had not contributed to ditch maintenance or paid ditch assessments during the adverse possession period.

■ Based on this evidence, Gomez asserts that Lupe Archuleta had not exercised any of the three irrigation water rights for at least 18 consecutive years and he, Gomez, now owns all of Archuleta's interest in the water rights. However, there is no evidence in the record that Gomez did anything other than intercept water in the ditches belonging to Archuleta's deeded interests in the adjudicated irrigation water rights. Interception of the water is not sufficient to prove the use element of adverse possession in a water case. The adverse claimant's use must be adverse, hostile, exclusive, and the claimant must actually beneficially consume all, or a specified portion, of the deeded owner's historical beneficial consumptive use entitlement for the irrigation water right during the statutory period, in order to deprive the deeded owner permanently of deeded interests in the right. In effect, what the adverse claimant owns, if successful, is the deeded owner's interest in the water right's adjudicated priority. *See generally* Joseph Sax, Barton H. Thompson, Jr., John D. Leshy & Robert H. Abrams, *Legal Control of Water Resources: Cases and Materials,* 247–264 (4th ed.2006).

Gomez failed to make the required showing of his actual beneficial consumptive use of Archuleta's deeded irrigation water rights. Gomez might have made such a showing by proof of their predecessor-in-interest, Sabino

Archuleta's, actual beneficial consumptive use of the three ditch rights on the parcels Sabino Archuleta deeded to Gomez and Lupe Archuleta, in comparison to the use each made after those lands passed to them. Gomez might have shown that his parcels were water short when he only utilized the water rights he was deeded, or that he broke out additional acreage into irrigation utilizing Archuleta's rights, thereby demonstrating his need for and actual beneficial use of Archuleta's rights.

The fact that Gomez admitted to considerable sub-flow from his use of water on the western portion of his lower parcel to Archuleta's parcel suggests that Gomez was not beneficially consuming all, or perhaps even any portion of the water he claims to have been adversely possessing from Lupe Archuleta. To the contrary, Lupe Archuleta may have been using and beneficially consuming, through sub-irrigation, his deeded water rights during the claimed adverse possession period.

■ In any adverse possession case, the "extent of actual occupancy must be determined by the court when ascertaining the extent of the adverse interest." *Anderson v. Cold Spring Tungsten, Inc.,* 170 Colo. 7, 14, 458 P.2d 756, 759 (1969). In this adverse water use case, a showing of the actual beneficial consumptive use that Gomez made of Archuleta's water rights for irrigation during the 18–year statutory period requires quantification, in acre feet, of the amount of Archuleta's water that Gomez beneficially used. Moreover, to successfully claim that he adversely possessed Archuleta's water rights, Lupe Archuleta must not have abandoned them to the stream. The court has a role in ascertaining whether all or part of Archuleta's water rights belong to the stream, and not to either Archuleta or Gomez. *See Santa Fe Trail Ranches,* 990 P.2d at 57.

Gomez might defeat the abandonment presumption by showing that, during the ten-year period of Lupe Archuleta's non-use giving rise to a presumption of abandonment, § 37–92–103(2), C.R.S. (2008), Gomez was actually consumptively using the Archuleta rights he now claims to own. *See, e.g., Web-*

ster v. Lomas, 112 Colo. 74, 76–77, 145 P.2d 978, 979 (1944) (upholding the trial court's finding that the adverse possessor had beneficially used the water through a ditch it built to the detriment of the original water right holder, who "abandoned" his structure).[6]

Based on the record before us, we conclude that Gomez has not met his burden of proof for adverse possession because he offered no evidence that he made actual beneficial consumptive use of all or any portion of the Archuleta water rights. The record shows the water court found that Gomez adversely possessed Archuleta's water rights based on Gomez's claim that Lupe Archuleta was not using any of his water, had not lent it out to others on the ditches, including Gomez, and Gomez had intercepted Lupe Archuleta's water adversely and hostilely for the statutory period. This was error because evidence of intercepting the water by itself does not prove actual beneficial use.

Because the water court employed the adverse possession grounds for rejecting Archuleta's request of an injunction against Gomez to restore ditches and not to interfere with the delivery of Archuleta's share of the adjudicated irrigation water rights, it did not consider the merits of Archuleta's claim for injunctive relief, and we cannot say at this point that any portion of Archuleta's claim for injunctive relief was frivolous and justified an award of attorney's fees against him. §§ 13–17–101, –102, C.R.S. (2008) ("[A] claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense.").

On the other hand, we recognize that Gomez may succeed on his claim that he adversely possessed Lupe Archuleta's right-of-way for the Manzanares No. 2 ditch by filling it in, without Lupe Archuleta having undertaken any action for restoration of the ditch onto his lands during the statutory period. Likewise, Gomez may succeed in showing that he or others extinguished the right-of-way for the Archuleta Ditch that might once

have extended onto Archuleta's parcel. Our most recent case addressing adverse possession of a right-of-way is Matoush v. Lovingood, 177 P.3d 1262 (Colo.2008). However, whether all or a portion of the Archuleta water rights have been adversely possessed by Gomez or were abandoned by Lupe Archuleta to the stream awaits further evidentiary presentation. If Archuleta still owns all or a portion of his deeded water rights, he could exercise a private right of condemnation to acquire needed new rights-of-way to his parcel that Gomez may have adversely possessed. Colo. Const. art. XVI, § 7; Colo. Const. art. II, § 14; §§ 37–86–101, –105, C.R.S. (2008).

On remand, the water court should allow the parties the opportunity to present supplemental evidence with regard to the injunction and adverse possession claims in this case. The water court order we review contains no finding regarding the actual use of the water for production of agricultural products on any of the parcels involved because the parties did not present the necessary evidence. As we held in V–Heart Ranch, the water court must evaluate all relevant circumstances surrounding the rival claimants' use of the contested water rights. 690 P.2d at 1276.

Quantification is also necessary to prevent an unlawful enlargement of Archuleta's deeded irrigation water right interests. A water right decreed for irrigation purposes cannot lawfully be enlarged beyond the amount of historical beneficial consumptive use belonging to the perfected right. In re Water Rights of Cent. Colo. Water Conservancy Dist., 147 P.3d 9, 14 (Colo.2006). Depending on the water court's findings based on the evidence, the sum total of whatever consumptive use must be apportioned in this case among Archuleta, Gomez, and any amount abandoned to the stream cannot exceed the historical beneficial consumptive use, in acre feet of water, attributable to the exercise of Sabino Archuleta's portion of the adjudicated irrigation water rights in the

---

**6.** In the six decades following Webster v. Lomas, our cases clearly equate "beneficial use" with "beneficial consumptive use" when evaluating the measure of an irrigation water right. See High Plains A & M, LLC v. Se. Colo. Water Conservancy Dist., 120 P.3d 710, 717 (Colo. 2005); see Weibert v. Rothe Bros., Inc., 200 Colo. 310, 618 P.2d 1367 (1980).

three ditches upon which Gomez and Archuleta's interests in this case depend.

## III.

Accordingly, we reverse the water court's judgment and remand this case for further proceedings consistent with this opinion.

Justice MARTINEZ dissents.

JUSTICE MARTINEZ, dissenting.

I dissent because the majority, for the first time, articulates the requirement that for a successful adverse possession claim against water rights, the party asserting the claim must show he beneficially used a specific quantity of water expressed in acre feet. I believe this is an inappropriate case in which to announce this new legal principle. The argument that beneficial use of a specific quantity of water is an element of an adverse possession claim was not directly raised at trial, and is not necessary to resolution of the issues before this court. Accordingly, I dissent.

Ralph Archuleta brought suit seeking an injunction to prevent Theodore Gomez from interfering with the use of certain water rights for which Archuleta is the deeded owner. Gomez counterclaimed, seeking a determination that he acquired title to these water rights through adverse possession. The only issue before the water court was whether Gomez adversely used Archuleta's water rights for the statutory period of eighteen years. Based on the evidence before it, including testimony from Gomez, Archuleta, and neighboring property owners, as well as rotation agreements governing the ditches in question, the water court determined Gomez's account of water usage was more credible than Archuleta's.

Although based on disputed evidence, the water court found Gomez used all of Archuleta's deeded water rights. While not explicit in the trial court's order, the record supports a finding that Gomez used the water for irrigation purposes, particularly since the only evidence of use was for irrigation. In reaching this conclusion, the water court accepted the parties' starting point that the water Gomez used was the water for which

Archuleta had a deeded interest. The disputed question at trial was whether Gomez had used all of Archuleta's water rights for eighteen years. The water court concluded the quantity of water for which Gomez made continual, actual, adverse, hostile, notorious, and exclusive use constituted all of Archuleta's water rights in the ditches in question. The majority does not utilize the standard of review that we apply to a water court's factual findings, but instead prefers to argue the disputed evidence as if the majority were the fact finder. Similarly, the majority does not claim the inferences made by the water court were unsupported by the evidence, but instead prefers to ignore the water court's resolution of disputed facts.

Until this appeal, the only matter for determination was whether Archuleta's or Gomez's account of water use was more credible. However, on appeal, Archuleta argues the claimant must show abandonment of the water plus a new appropriation by the claimant for a successful claim of adverse possession of water rights. This argument is incorrect, and easily resolved. *Matter of Water Rights of V–Heart Ranch, Inc.*, 690 P.2d 1271, 1273 (Colo.1984) ("A party seeking to establish ownership of a water right by adverse possession has the burden of establishing that such possession is actual, adverse, hostile, and under a claim of right, as well as open, notorious, exclusive and continuous for the prescribed statutory period."). In the course of making this easily refuted argument, and in arguing that Gomez didn't use all of his water rights for eighteen years, Archuleta made several statements regarding the necessity of an adverse possession claimant to show the precise amount of water he used. The majority grasps at these few statements in order to claim he raised the issues the court resolves; however, when the statements are read in context, it is clear Archuleta was not making the argument the majority finds compelling.

I agree with the logic that, because new appropriations require beneficial use, an adverse possessor of water rights should also show beneficial use. However, this element is not statutorily required and has never before been articulated by a court in this

state. The majority states the beneficial use requirement as if it has always been part of adverse possession law. This requirement may be a logical addition to the elements of adverse possession of a water right; however, it is a new proposition.[1] I believe that, given the small amount of water in question, the amount of time this litigation has already taken,[2] and the issues at stake, this is an inappropriate case in which to announce a new legal requirement.

In addition to the beneficial use requirement, the majority asserts that in order to successfully claim adverse possession of water rights, the claimant must mathematically quantify the exact amount of water beneficially used. The majority suggests this should be done in consultation with experts and include testimony regarding historic water consumption and the nature and extent of crop production on the land. This is a new requirement for an adverse possession claimant of decreed ditch water rights.

Further, even with the additional elements of beneficial use and precise quantification of the amount of water used added to the requirements for adverse possession of water rights, I do not believe reversing the water court and remanding the matter for determination of beneficial use is required. The trial court determined the quantity of water Gomez used was all of the water to which Archuleta had deeded interests. Quantification of Archuleta's deeded water rights appears in the deeds quoted by the majority. A water right is a use right and, for a successful adverse possession claim, the claimant must prove he used the water. The act of using water necessarily implies a beneficial use. In Colorado, irrigation is a beneficial use of water. *Farmers' Indep. Ditch Co. v. Agricultural Ditch Co.*, 22 Colo. 513, 521, 45 P. 444, 450 (1896) (application of water to land constitutes a beneficial use). Therefore, the evidence that Gomez was using all of Archuleta's deeded water rights for irrigation is sufficient to support the water court's conclusion that Gomez satisfied the elements of adverse possession even given the beneficial use and precise quantification requirements articulated by the majority.

Given that a beneficial use requirement has not previously been articulated in our adverse possession law, and beneficial use is implied in the trial court's findings, I would not reverse the water court. Accordingly, I respectfully dissent.

---

1. While stating the beneficial use requirement as if it has always been an element for adverse possession of a water right, the majority seems to recognize this is a new requirement because it takes the unusual step of sending the case back to the water court for particular findings, generally recognized as a remedy for newly announced legal principles, when a simple reversal would otherwise be appropriate.

2. This matter was initially tried in district court in Huerfano County in 2003. On appeal, the court of appeals held water courts had exclusive jurisdiction over cases involving adverse possession of water rights, and remanded the matter to the water court. The only issue throughout these multiple proceedings has been that of credibility.